NEW-YORK,
May, 1831.

Bronson
v.
Noyes.

### D. C. BRONSON *vs.* NOYES.

Where a *bail bond* is taken on the arrest of a defendant on a capias, under an
agreement that it is to be inoperative, unless other or additional bail be pro-
cured by the defendant, and the defendant is permitted to go at large, the
officer making the arrest may retake the defendant before the return of the
process, if such other or additional bail be not furnished.

Where a bail bond is taken, conditioned for the appearance of a defendant at
the return of a writ but under the express agreement that it shall be consi-
dered only as security for the forthcoming of the defendant on the day
succeeding the arrest unless other or additional bail be given, and such bail
be not given, the officer making the arrest may retake the defendant.

THIS was an action of *false imprisonment*, tried at the
Monroe circuit, in March, 1830, before the Hon. ADDISON
GARDINER, one of the circuit judges.

The defendant, as under sheriff of Monroe, on the 21st Jan-
uary, 1829, arrested the plaintiff on a *capias ad respondendum*,
at the suit of one Loder, returnable on the third Monday of
February, then next.   The plaintiff applied to his brother,
H. O. Bronson, to give bail to the sheriff on the arrest.   H.
O. Bronson declined becoming bail, but told the sheriff he
would see the plaintiff forthcoming in the morning.   The
sheriff observed : " Sign the bond, and he will get some other
person to sign with you, or get other bail in the morning ; "
upon which the defendant in the capias and H. O. Bronson
signed a bail bond, conditioned for the appearance of the de-
fendant at the return of the writ, and delivered it to the sher-
iff: H. O. Bronson understanding it to be the agreement of all
concerned, that if D. C. Bronson did not procure other or ad-
ditional bail the next day, the bond was to be delivered up
to him, H. O. Bronson.   Within a few days after the bond
was signed, H. O. Bronson called upon the sheriff to procure
additional bail, or give the bond, and they together called
upon D. C. Bronson for the same purpose. Subsequently, on
the 4th February, they again called on D. C. Bronson, when
the sheriff told him that he had come to have him procure new
or additional bail ; that H. O Bronson was unwilling to be

bail, and he had therefore given up to him the bond ; at the same time stating that he had only taken H. O. Bronson as bail for the evening, and that he, D. C. Bronson, was to get other or additional bail the next day, and he now wished him to get new bail, or he must take him to jail. To this statement D. C. Bronson assented, and said he did not wish H. O. Bronson to be his bail, and would get other bail ; on which H. O. Bronson departed. After an ineffectual effort on the part of D. C. Bronson to procure bail, the under sheriff committed him to jail, where he remained from the evening of the *fourth* until the evening of the *fifth* day of February. On these facts the action was founded. The judge charged the jury that if they believed it was the intention of the defendant in taking the bond of H. O. Bronson, to hold him responsible at all upon that bond, in case of an escape by the plaintiff, or until new bail should be procured by the plaintiff, it amounted to an acceptance of the bond and of the bail, and they would find for the plaintiff; but if they believed it was never the intention of the defendant, in taking the bond, to hold H. O. Bronson, as bail for any time, they should find for the defendant. And he further instructed them that if they believed the declaration of the plaintiff, that he did not wish H. O. Bronson to be bail, amounted to a surrender of himself, they should find for the defendant, but if they should believe that the defendant did not so surrender himself, they must find for the plaintiff. The jury found a verdict for the plaintiff for $24, and the defendant moved to set aside the verdict.

*V. Matthews*, for defendant. The bond was conditional, and the condition not being performed, it was not delivered as a good and sufficient bail bond ; it was as no bond ; it had no validity, and the defendant might therefore surrender it to H. O. Bronson, and retake the defendant in the writ. A sheriff who has arrested a defendant on a capias, and permitted him to go at large without bail, may retake him at any time before the return of the process. 2 T. R. 174. 7 id. 111. The second arrest here was previous to the return day of the writ. It is also a well established rule that a defendant who has given a bail bond may, with the assent of the sheriff, *surrender* himself

in exoneration of his bail at at any time before the return of the capias, and that the sheriff may then detain him in the same manner as if no bail bond had been given.    6 T. R. 753.  7 id. 122.    1 East, 383.    1 Bos. & Pul. 325.    2 Saund. 61, n. 3. The acts of the plaintiff in this case  amounted to a surrender. The  judge erred in submitting to the jury the *intention* of the defendant in taking the bond; that was a question of law and not of fact, as was also the  question of *surrender*, the facts being undisputed.

*E. Griffin*, for plaintiff.  The sheriff was bound to take a bail bond if offered, and he could take no other than a bond conditioned for the appearance of the defendant at the return of the writ.  He insisted upon a bond, or to hold the body of the plaintiff, and he took a bail bond in the usual form. It was not delivered conditionally; it is not pretended that there was any agreement to that effect; the witness simply stated that such was his understanding.  It was a question of fact whether the bond was taken as a bail bond or not, and the jury have said it was intended so to be received.  A sheriff may retake, before the return of the writ, a defendant whom he has permitted to go at large, but he cannot retake him after taking a bail bond at the instance of the bail.  As to the *surrender*, it cannot be pretended to have been *voluntary*, and unless it was so, it cannot be called a surrender ; besides, on this fact also the jury have passed.

*By the Court*, NELSON, J.  The facts in this case have very much the appearance of a design on the part of a defendant, under arrest on legal process, to take advantage of an officer for relaxing the rigor of its  execution through motives of humanity.  Ministerial officers, in the execution of process, are often induced from such feelings, to temper the sternness of justice, and often do so, under perilous responsibility ; and it would be a reproach upon courts of justice. if they did not encourage so generous a spirit, so far as may be compatible with the rights of parties or the public, and the entire accomplishment of the ends of the law.  We would not countenance a looseness in the execution of their duties, nor

does this sentiment imply it, for humanity is not irreconcilea-
ble with strict fidelity on their part.

We think the judge erred in putting the case to the jury upon the first point, to wit : " that if they believed it was the intention of the defendant in taking the bond of H. O. Bronson to hold him responsible at all upon it, in case of an escape, or until new bail should be procured by the plaintiff, that then it amounted to an acceptance of the bond, and they should find for the plaintiff." Now it is quite clear, that the right of the officer to rely upon the bond for the security of the appearance of the plaintiff according to the exigency of the writ, would not depend solely upon the intention with which he received it ; if there was not a delivery of the bond by H. O. Bronson, or if it was the agreement of the parties at the time it was put into the hands of the officer, that it was not to be delivered to take effect until additional bail was procured, then, whatever might be the intention of the defendant, the bond would be inoperative, and have no legal existence. There must be a delivery as well as an acceptance, to give validity to a deed.

It is true the bond was delivered to the defendant at the time of its execution by H. O. Bronson, but for what purpose ? If for the purposes expressed therein, then it would be valid ; if as a mere deposit until additional security was obtained, clearly there was no delivery ; and if an escape had taken place, the defendant could not have enforced its obligation for an indemnity. The mere manual tradition of a deed by the grantor or obligor to the grantee of obligee, and nothing else, would be *prima facie* evidence of a legal delivery, but not necessarily conclusive and inexplicable. The party may explain and rebut the *prima facie* legal effect of the act. This is not impugning the doctrine applicable to an escrow ; it is only allowing a party to contest the delivery. It follows, from these principles, that the judge, upon the facts in the case, should have put to the jury not only the acceptance of the bond by the officer, but the delivery by H. O. Bronson, for the purposes expressed in it : for if the jury should have negatived that fact, the verdict ought to have been for the defendant.

NEW-YORK,
May, 1831.

Bronson
v.
Noyes.

There is another view of the case, upon the supposition that the bond was executed and delivered. The statute, 1 R. L. 422, sec. 13, provides that every sheriff and other officer shall let out of prison all persons by them arrested, &c. "upon reasonable sureties of persons having sufficient," &c.; and it has been determined, (and without such determination the statute would have been nugatory, for the sheriff had an election to take bail for the act,) that the statute is imperative upon the sheriff, and if he refuses reasonable bail, an action on the case will lie against him ; 1 Tidd. 194, 5, 6 *and cases there cited;* and it necessarily follows, from this obligation to take bail, that after it is taken, he cannot arrest the defendant upon the same process, unless he discover his bail to be insufficient, and then no longer than until good bail be offered. *Tilman* v. *Lansing*, 4 Johns. R. 48. Now what was the bail offered to the sheriff in this case by the defendant on the arrest ? Only for his forthcoming in the morning. This is the utmost extent of the security offered by him, or consented to by the bail. The sheriff might have refused it, and committed him to custody ; but he consented to take it, and the bond was signed accordingly ; and without the bond he would have had no valid security even until morning, which accounts sufficiently for the desire of the sheriff that the bail should sign it. The officer might have been satisfied with the reasonableness of the bail for the period offered by the defendant, but not till the return of the writ ; at all events, the sufficiency of the bail for the latter period was not presented for the consideration of the officer, and we are not to infer, in the absence of proof, that he was content with it, especially when it was the express understanding of all parties that other or additional bail was to be procured the next day. This was all the sheriff afterwards insisted upon from the plaintiff, and the failure to procure it, I think, constitutes a sufficient justification for retaking him on the writ. It is true the sheriff made no objection as to the sufficiency of the bail for the whole period ; but, as before stated, the limited time for which the bail was offered and accepted did not present that question to his consideration, and accounts sufficiently for his silence. I am of opinion, upon this ground, that the defendant was entitled to the verdict upon the evidence.

Whether this form of action is the appropriate one, the ar- NEW-YORK, rest being by legal process, it is not now necessary to examine. May, 1831. That the writ was not *functus officio* is clear, as a defendant on mesne process may be retaken upon the sureties becoming insufficient.

New trial granted; costs to abide the event.