STATE OF MAINE *versus* BENJAMIN D. PECK & als.

A bond perfect upon its face, apparently duly executed by all whose names appear therein, purporting to be signed, sealed and delivered by the several obligors, and actually delivered by the principal without stipulation, reservation, or condition, cannot be avoided by the sureties upon the ground that they signed it on the condition that it should not be delivered unless it should be executed by other persons, who did not execute it, when it appears that the obligee had no notice of such condition, and nothing to put him upon inquiry as to the manner of its execution, and also that he has been induced upon the faith of such bond to act to his own prejudice.

ON EXCEPTIONS to the ruling of BARROWS, J., and on MOTION to set aside the verdict as being against evidence, by the defendants.

DEBT on a State Treasurer's bond. The case is fully stated in the opinion.

*E. & F. Fox*, for defendants.

The ruling does not recognize the legal effect of an escrow. There was never any delivery with the consent of the sureties. If delivered without such consent, the instrument was void. 1 Touchstone, (Am. Ed.,) c. 4, p. 57; Idem, p. 59; *Pawling* v. *The United States*, 4 Cranch, 222, is a case very similar to this.

See also *Duncan* v. *same*, 7 Peters, 448; *Johnson* v. *Baker*, 4 B. & Ald., 440; *Bibb* v. *Reed*, 3 Ala., 88; *U. S.* v. *Nelson*, 2 Brock., 64; *Haskins* v. *Lombard*, 16 Maine, 143; *Quarles* v. *The Gov.*, 10 Humph., (Tenn.,) 122; *Perry* v. *Patterson*, 5 Humph., 133; *Smith* v. *South Royalston Bank*, 32 Vermont, 341; *Jackson* v. *Sheldon*, 22 Maine, 570; *Rhodes* v. *School District in Gardiner*, 30 Maine, 112; *Carr* v. *Hoxie*, 5 Mason, 40.

The case is similar in principle to that of a conditional sale of personal property, in which case a *bona fide* purchaser, for value, and without notice, takes subject to the condition. *Coggill* v. *Hartford & New Haven R. R. Co.*, 3 Gray, 547.

*J. & E. M. Rand*, for defendants.

A surety may sign a bond *conditionally*, and, if condition is not complied with, the instrument is not *the deed* of the signer. *Johnson* v. *Baker*, 4 B. & A., 440; *Wheelwright* v. *Wheelwright*, 2 Mass., 452; *Fertig* v. *Bucher*, 3 Barr, 308.

Even if obligee obtains possession of it. *Haskins* v. *Lombard*, 16 Maine, 140; *Cutler* v. *Whittemore*, 10 Mass., 444.

*Peters*, *Attorney General*, and *Drummond*, for plaintiff.

BARROWS, J.—Benjamin D. Peck, duly elected Treasurer of State for the year 1858, before entering upon the duties of his office, in conformity with constitutional and statutory provisions, presented to the Legislature the bond now in suit as his official bond.

It was, when thus presented, upon its face, a perfect instrument, drawn according to the requirements of law, and apparently duly executed by all whose names appear therein. It purported to be signed, sealed and delivered by the several obligors, and no question is now made as to the genuineness of the several signatures. Peck, the principal, delivered it, without stipulation, reservation or condition, to the committee of the Legislature. There was no suggestion, from any quarter, that the instrument was not in very deed what it purported to be,—no indication of incompleteness, to put the Legislature upon inquiry as to the manner of its execution. The bond was found satisfactory, duly approved and filed, and, upon the faith of it, Peck became Treasurer of State. The intelligent and wealthy gentlemen who had *signed* this instrument as Peck's sureties made no inquiries as to the disposition which had been made of it, and knew that Peck was exercising the functions of the office throughout the year. He proved unfaithful to his trust, and they now claim to be exonerated from liability as his sureties, on two alleged grounds. 1. That there were no seals upon the instrument when they signed it, and they affixed none, and gave no authority to any person to place seals up-

on it. 2. That some of them signed and delivered the bond only upon condition that certain other gentlemen, who had been co-sureties with them for Peck the previous year, should also execute this bond.

The verdict of the jury being against them, they present the case,to this Court upon a motion to set aside the verdict as against law and evidence, and also upon exceptions to the instructions given by the Judge presiding at the trial.

I. As to the alleged want of the seals. The jury settled that question against the defendants, under instructions of which they make no complaint. Is the verdict supported by the evidence on this point? While the oral testimony preponderates in favor of the defendants' position, we cannot shut our eyes to the fact that marks evidently left upon and against these seals by the pens of the signers, in the act of affixing their signatures, afford evidence falling very little short of absolute demonstration, that there were seals upon the bond when it was signed by the defendants. Such a mark was left by the pen of him who was confessedly the first to subscribe his name to the instrument. The jury were fully warranted in finding against the testimony of those defendants who were examined as witnesses, and in conformity with the declaration to which they had subscribed, — "*sealed with our seals*," — that the bond *was* duly sealed.

In saying this, we do not mean to be understood as expressing the belief that these sureties gave wilfully false testimony in this matter, but they were palpably mistaken as to the fact. By one of those fantastic tricks which self-interest plays with memory, this bond was probably confounded in their minds with another not here in suit. The motion for a new trial cannot be sustained, for the finding of the jury was strictly in accordance with law and evidence unless the instruction excepted to is found to be erroneous.

II. That instruction relates to the testimony by which it is claimed that the defendants have shown a conditional delivery.

Upon this point, John B. Cummings, one of the sureties, testified that he signed the bond at his house, where it was brought by Allen Haines, another of the sureties, and in presence of his daughter, (who affixed her name as a subscribing witness in the ordinary form,) and of said Haines. He further testifies : — "At the time I signed I said to Haines that I would sign it only upon the condition that all those persons who were on Peck's first bond should put their names on this one. I mentioned their names, St. J. Smith, Spring, &c. When I handed the paper to Mr. Haines, I said to him, this goes for nothing unless those names are on ; make no delivery of this except those names are all on. I did not know until the defalcation that the others had not signed ; don't recollect whether I expected paper to be brought back to me ; *supposed others would see to that matter.*"

Upon cross-examination, he says, "I can't say that I read the paper, only glanced at it. I knew that I was signing as security for Peck as Treasurer for 1858. I understood that, if those others signed, it was to be delivered as Peck's bond. Mr. Haines asked me if I would sign as surety for Peck when he first came in. I never called on Peck for any security, and never said anything to him about the bond. Haines told me that the other names were to go on to the paper. I think I wrote my name in the body of the instrument. I did not know whether the instrument was accepted by the State as a bond of Peck. Never heard anything about it. I did not expect the bond to be delivered till the others signed it."

Some of the other defendants gave testimony indicating that they signed with the expectation and understanding *among themselves*, that other names were to be procured, but the testimony of Cummings, above recited, approaches more closely than any other to the point of a conditional delivery, and the presiding Judge instructed the jury, that a mere expectation that other persons would sign the paper was not sufficient to make the obligation a conditional one, and that the testimony of Cummings, as to his acts and declarations,

at the time he signed it and handed it to Mr. Haines, if true, and believed by the jury, would not clear him from liability, although the other names were not put on, *if he allowed the paper to go beyond his control into the possession of the State authorities.*

It should be borne in mind that this conversation of Cummings was with a co-surety and co-defendant, and, so far as appears, never communicated even to Peck, the principal in the bond. Not a hint that any such expectation existed, much less that any such condition was attempted to be imposed, reached the ears of the State government or any of their agents. Unlike some other bonds, where a similar condition annexed to the delivery has been held to be effectual, this instrument was apparently complete and executed by all who appeared upon the face of it ever to have been expected to become parties to it.

Every one must allow that it would be a monstrous violation of law, justice and good faith, to permit one party to a contract to introduce into it conditions, upon the happening of which alone he will be bound, that are not made known to the other party. Is it any less so to permit a man to deny his own solemn declaration that he has become a party to it, when that declaration has been communicated to the other party, and acted upon by him to his prejudice, under circumstances not calculated to excite even a suspicion that such a denial would ever be attempted? That the estoppel imposed by law in a case like the present would not apply in a case where there was anything upon the face of the paper, or in the circumstances attending the reception of it by the obligee or his agents, to put him upon inquiry, nor where the obligee has not been induced to act to his prejudice by the imprudent act of the obligor, may well be conceded, and it is believed that no well considered case has ever gone further. If the doctrine contended for by the defendants here can prevail, it is not easy to perceive why sureties who may hereafter find themselves in a similar unfortunate position may not with equal propriety come into Court and set

up (and testify to) some purely mental reservation which should exclude the idea of an intention on their part to make an absolute delivery; for it is certainly true that the question of delivery depends upon an act done and the *intent* with which it is done. *Rhodes* v. *School District in Gardiner*, 30 Maine, 112, and cases there cited.

But of paramount importance is the question — Under what circumstances is the obligor or grantor at liberty to dispute the intent which is implied by the act? The estoppel does not apply in the case of an instrument the execution of which is upon its face incomplete. The case of *Pawling* v. *The United States*, cited and relied upon in defence here, was error to the District Court for the District of Kentucky, in an action of debt upon an official bond given by *Ballinger* as collector, and signed and sealed by Pawling and others as his sureties, who *pleaded* that they delivered the same as an escrow to Ballinger, to be safely kept upon condition that, if Simon Ingleman and William Patton, *named on the face of the bond*, should execute the same *as co-sureties*, then the bond should be delivered to James Morrison, supervisor, on behalf of the United States, as their deed, and not otherwise, and that the same never was executed by Ingleman and Patton, yet Ballinger delivered it to the supervisor, *and so not their deed*. The testimony fully supported this plea, and showed that the names of Ingleman and Patton were inserted in the body of the bond as obligors by one of the defendants, and that the supervisor, who received the bond, suggested to the principal that those who had already signed were sufficient, though the principal appeared anxious to have more. Under such circumstances, and when the defendants had apparently been deprived of the co-sureties for whom they had stipulated by the suggestion of the government agent, it is not surprising that nobody claimed or held that the defendants in that case were estopped from availing themselves of the condition annexed to their delivery.

In *Duncan* v. *The United States*, 7 Peters, 435, *the bond was drawn in the names of three*, as sureties for the fourth,

but was executed by the principal and two sureties only. The Court recognizes as "a principle of the common law, too well settled to be controverted, that where an instrument is delivered as an escrow, or where one surety has signed it on condition that it shall be signed by another before its delivery, no obligation is incurred until the condition shall happen." But counsel had no occasion to raise and the Court no occasion to consider the question of estoppel, as affected by the apparent incompleteness of the instrument, for the heirs of the surety were held liable, for want of proof of an express condition annexed to the delivery. In that case there were no subscribing witnesses, and, of course, the distinct, unequivocal written declaration, made in the presence and by the consent of the obligors, and communicated to the obligee upon the reception of the paper, (which is found in the case at bar,) that the instrument was "signed, sealed and *delivered*" by the obligors, as their deed, was wanting. But the Court held that the acknowledgment of the bond by two of the sureties, "and its delivery to the government, would seem to rebut the inference drawn against its validity, from the simple fact of its not having been signed by" the other surety. "There is, therefore, nothing upon the face of the record which would go to destroy the validity of this bond," say the Court. The case of *Wells* v. *Dill*, 1 Martin, 592, where the defendant relied upon "the want of the signature of another person to the instrument, whose name is mentioned in the body of it as a co-surety," and where the Louisiana Court held "the contract incomplete until all the parties contemplated to join in its execution affix their names to it," and that "the law *presumed* that the party signing did so upon the condition that the other obligors named in the instrument should sign it," being cited, the Court remarked that *under the civil law* the principle is correctly stated as above by the Louisiana Court, but, as has been seen, *under the common law*, they hold a different doctrine, and decide that, even when the names of others besides the signers are inserted as co-sureties in the

body of the bond, there is nothing *upon the face of the record* which would go to destroy the validity of the bond; and that is *all* that is decided, upon that branch of the case. It is not perceived that the decision affects favorably the position taken by the defence in the case at bar. For, *without it*, we should hold it to be unquestionably correct that, where one surety has signed a bond on condition that it shall be signed by another before its delivery, no obligation is incurred until the condition shall happen, *unless* the obligor by his acts and declarations has estopped himself under the circumstances of the case from asserting a conditional delivery; and the sureties were held liable in Duncan's case without resorting to an estoppel. *Scott & al.* v. *Whipple & al.*, decided some years before by the Supreme Court of this State, 5 Maine, 336, is identical in principle and similar in result.

In *Cutler* v. *Whittemore*, 10 Mass., 442, the bond was written as if to be executed by three, but was executed by only two.. It was held valid and effectual against the two who executed it, as in the two cases last adverted to, with the remark by the Court that, " if there had been any agreement or condition at the time that it should not be delivered as their deed, unless the third person named as obligee should also execute it, this would show that it was only delivered as an escrow." But this plainly does not interfere with the principle that conditions imposed by a party to a contract, to be effectual against the other party who has been induced by the contract to alter his condition to his prejudice, must have been in some way brought to his notice.

*Haskins* v. *Lombard*, 16 Maine, 140, enunciates a rule that is strictly correct, in holding that an obligor in a bond, *so written that it seems to have been contemplated by the parties* that it should be signed by several, may annex an effectual condition to his act of signing and sealing that it shall not be binding upon him unless executed by the other obligor named, and this appears to be the entire length to which any well considered case has gone. Unfortunately for these

defendants, the bond in suit was not so written, and it never seems to have been " contemplated by *the parties*," (which term includes the obligees,) or their agents, that the bond was to be executed by any but those who did in fact execute it, nor had the obligees or their agents any reason to suspect the existence of any such reservation or condition as that which the defendants now claim to set up.

The case of *Fertig* v. *Bucher*, 3 Barr, 308, goes no further than simply *this*,— if a party, executing a bond, expressly stipulates that it shall not be delivered up until twelve names are obtained to it, *and the agent of the other party so promises*, the bond is in the hands of the agent but in the nature of an escrow, and, until the condition be performed, it cannot be legally delivered, and so cannot be the deed of the party making the stipulation. It appeared that one *Boas* undertook with a list of names to procure a bond to indemnify Fertig and others, (the plaintiffs,) for signing as sureties of a sheriff, and got the defendant's signature under the above circumstances. Others refused to sign—*Boas* kept the bond in his desk for several years without saying anything to the plaintiffs about it, but finally delivered it to them. The Court very properly held the condition thus made with the plaintiff's agent effectual.

*Wheelwright* v. *Wheelwright*, 2 Mass., 452, refers approvingly to the rigid technicality of ancient law as laid down in the Touchstone, as follows :—"If a grantor deliver any writing *as his deed* to a third person to be delivered over by him to the grantee *on some future event*, it is the grantor's deed presently, and the third person is a trustee of it for the grantee, and, if the grantee obtain the writing from the trustee *before the event happen*, it is the deed of the grantor, and he cannot avoid it by a plea of *non est factum*, &c. But, if the grantor make a writing and seal it and deliver it to a third person *as his writing or escrow*," the case is different. The Touchstone carefully propounds two cautions to be heeded where delivery as an escrow is intended, the first of which is, that the form of words used

State *v.* Peck.

in such delivery must be apt and proper. "The words, therefore, that are used in the delivery, *must be after this manner.* I deliver this to you *as an escrow* to deliver to the party as my deed upon condition," &c. "For if, when I deliver the deed to the stranger, I shall use these or the like words, — I deliver this to you as my deed, and that you shall deliver it to the party upon certain conditions, * * * the deed doth take effect presently, and the party is not bound to perform any of the conditions." It is manifest that, if this case were to be decided upon learning so technical, the defendants would be in sorry plight upon their own showing, for they can only claim upon the testimony that Cummings, without any such apt form of words as is prescribed in the Touchstone, handed over to Haines a bond *attested in the usual form as his deed,* with a simple caution not to deliver it to the obligee without performance of the condition, — the precise case in which, according to the Touchstone, the deed doth take effect presently and the party is not bound to perform any of the conditions.

But it is needless to remark upon this, for a doctrine so technical was denied in *Johnson* v. *Baker,* 4 B. & A., 440, and by our own Court, in *Jackson* v. *Sheldon,* 22 Maine, 570, where it is rightly held that it is not necessary that there should be an express declaration that an instrument is delivered as an escrow to make it such. Both the last named cases are also cited in defence, and the attempt to bring the case of *Wheelwright* v. *Wheelwright* to bear upon the case at bar, *through them,* is somewhat like "putting new wine into old bottles." Neither of the three cases has any bearing upon the principles of estoppel, which we believe must be decisive of the present case.

*Johnson* v. *Baker,* which most nearly resembles it, was *this.* Before the execution of a composition deed, it was agreed in the presence of the surety for the payment of the composition, that it should be void unless all the creditors executed it. The surety at the same interview, afterwards executed the deed in the ordinary way, and the deed was

then delivered to one of the creditors *in order that he might get it executed by the rest.* It was held, and rightly held, that this was to be considered a delivery of the deed as an escrow, and thus, all the creditors not having executed it, the surety (defendant) was not bound. Plaintiff was one of the creditors *and not present at the conversation.* The essential element that was wanting to estop the defendant in that case from treating the delivery as conditional and availing himself of the stipulation accordingly, was — that the creditor apparently was not induced to do any act prejudicial to himself in the premises. He only failed to obtain the additional security for a preëxisting debt to which he would have been entitled had the condition been performed. The surety was entirely free to rely upon the condition annexed to his act in the accomparying conversation.

*Perry* v. *Patterson,* 5 Humph., 133, which is claimed by counsel as identical in principle with the case at bar, seems, as it is given in the Digest, (the volume of Reports is not accessible,) rather to be identical with *Johnson* v. *Baker,* and presents the same reason why no estoppel was raised.

In *Rhodes* v. *School District in Gardiner,* the condition was made with the agent of the district, and by him communicated to a meeting of the district.

So in *Quarles* v. *The Governor,* 10 Humph., 122, the declaration that the surety would not be bound, unless others were obtained, was made to the clerk, the agent of the government.

In *Millett* v. *Parker,* 2 Metcalf's (Kentucky) Reports, 608, (1859,) Millett, (original defendant,) offered the testimony of his co-defendant Vansant, that the instrument relied upon by Parker was signed by Millett, upon the express understanding and condition that R. G. Beverly was also to sign it, and that, unless he did sign it, the witness was not to deliver it to Parker nor was it to be binding on Millett, — that he did afterwards deliver it to Parker without the knowledge or consent of Millett, and without having obtained the signature of Beverly; but he did not state

that Parker was apprised, or had any information of the agreement between Millett and the witness.

The testimony was rejected, and, when the case was presented on appeal, the Court, (after reviewing in an elaborate opinion by SIMPSON, C. J., the authorities copiously cited on both sides in argument,) say they are " of the opinion that the testimony which was rejected was insufficient to support the defence relied upon, and, if it had been admitted, still that a judgment should have been rendered against the appellant. He alleged in his answer that Parker, to whom the covenant was executed, had notice of the promise which was made by Vansant, that the writing should not be delivered unless it was signed by Beverly; but there was no testimony whatever tending to prove that he had any information, &c. If he had been apprised of the existence of that agreement, then he would have acted in bad faith to have accepted the covenant when it was offered to him by the principal obligor; but, being ignorant that any such agreement had been made by the obligors, he had a right to presume that the instrument had been prepared for his acceptance, and that the obligor who had it in his possession was authorized to deliver it to him. *Wherefore* the judgment is affirmed." This case is direct to the point stated in the syllabus as follows :—" One who signs a covenant as surety upon the condition and agreement, between him and his principal, that it is not to be binding upon him or delivered to the covenantee unless another person should also sign it as surety, is bound thereby, although the principal to whom he entrusted it deliver it to the covenantee without a compliance with such condition, of which, and its breach, the latter had no notice." It is true that in New York a different doctrine has been held.

In the case of *The People* v. *Bostwick*, 43 Barbour's Sup. Ct. Reports, 9, the decision in *Millett* v. *Parker*, is impugned, and we, in our turn, must be permitted to question the authority of the New York case, in which we find quoted indiscriminately, to support a decision that overrides the

whole doctrine of estoppels *in pais*, cases where the instrument was on its face incomplete, such as *Pawling* v. *The United States*, (*ubi supra*,) *Fletcher* v. *Austin*, 11 Ver., 447 ; *State Bank at Trenton* v. *Evans*, 3 Green, (N. J.,) 155, with cases where the obligee had done nothing to his own prejudice upon the faith of the instrument, such as *Johnson* v. *Baker*, (*ubi supra*,) *Leaf & als.* v. *Gibbs*, 4 Car. & Payne, 464, and cases where " previous to the obligor's signing there was an agreement *between the parties* to an instrument" that it should not be delivered till all had signed, like *Black* v. *Lamb*, 1 Beasley's (N. J.,) Reports, 108.

We have already had occasion to advert to the several reasons why, *in such cases*, no estoppel would attach.

The case does not seem to be materially strengthened by the opinions given by the learned Judges in the Court of Appeals where the decision was affirmed.    5 Tiffany, 445. They refer to the same cases, with the addition of *Bronson* v. *Noyes*, 7 Wendell, 188, where a bond was given to the sheriff on an arrest.    " The sheriff said to the party signing, 'sign the bond and he will get some other person to sign with you or get other bail in the morning,'" and the Court thereupon held that "*if it was the agreement of the parties*, at the time it was put into the hands of the officer, that it was not to be delivered to take effect until additional bail was procured * * * the bond would be inoperative and have no legal existence."    It is superfluous to say that we have no occasion to question the correctness of the decision in *Bronson* v. *Noyes*.

It is urged that the case at bar is similar in principle to that of a conditional sale of personal property, through which even a *bona fide* purchaser, for value, from the conditional vendee, can obtain no title as against the conditional vendor, though he may have had no notice of the condition, and the case of *Coggill* v. *The Hartford & New Haven R. R.*, 3 Gray, 547, is cited.    It seems to us that there is a marked distinction.    The conditional vendee is not the agent

of his vendor to make sale, upon any terms whatever. It is not *with him* a question of conformity to secret instructions limiting apparent authority. The naked possession of a chattel, which is all that has been entrusted to him by his vendor, carries with it, under ordinary circumstances, no authority to sell, either real or apparent. That possession may be the possession of a lessee or a borrower, and the case of a sale of personal property may well be left upon the rule which requires the purchaser to see to it, at his own proper peril, that his vendor has a good title to that which he undertakes to sell. But Cummings entrusted to his co-obligor a bond, perfect in form, which he himself had subscribed and *caused to be attested as delivered,* and thereby gave him an apparent authority to dispose of it according to the natural course of proceeding in such cases. There is no substantial analogy between the possession of personal property and the possession of such an instrument as this. What could the most cautious and prudent business man, finding this bond in the possession of Haines, and having no knowledge of the private conversation between Cummings and him, infer was to be done with it except that which actually was done; to wit: to transmit it to Peck, the principal, to be by him presented to the Legislature and filed as a valid bond for the security of the State? It is the ordinary course of business in such cases. The bond passes from hand to hand among the obligors, one after another subscribing it, and *authorizing the attestation of it as delivered by him,* and this solemn declaration is finally communicated to the obligee, when he receives the bond from the principal; and when the obligee, in good faith, accepting an instrument perfect upon its face and relying upon these acts of the obligors, has been induced thereby to act to his prejudice upon the faith of the security, common justice forbids the obligors to allege any secret arrangement among themselves, to defeat the effect of their acts, as rigidly as it would exclude evidence of a reservation merely mental for the same purpose. Instead of resembling the case of a conditional

sale of personal property, the case resembles rather the act of him who sends his goods to an auction room.  It is not to be supposed that they were sent there merely for safe keeping, and, whatever the secret instructions of the owner may have been, the purchaser will be safe.   For, if the principal clothe his agent with the apparent right of disposing of property in the ordinary course of trade, it will be presumed that he is really invested with the requisite authority. *Pickering* v. *Bush & al.*, 15 East, 38.

Chancellor KENT says, "the principal is bound by the acts of his agent, if he clothe him with powers calculated to induce innocent third persons to believe the agent had due authority to act in the given case."  He further says, and it is believed that it embodies the correct rule, "whoever deals with an agent constituted for a special purpose, deals at his peril, when the agent passes the precise limits of his power, though, *if he pursues the power as exhibited to the public, his principal is bound, even if private instructions had still further limited the special power*.  What the power indicated by the possession and control of an instrument thus attested, and by the ordinary course of business in such cases, was, in *this* instance, we have already seen.

The case falls within the principle of *The Passumpsic Bank* v. *Goss*, 31 Vt., 315, or, if there is any difference, this is the stronger, for Peck, the principal, who finally handed the bond over to the State authorities, does not appear to have had any knowledge that other sureties were expected or desired.

It falls within the principle of that great array of cases, from *Hern* v. *Nichols*, 1 Salk., 289, and *Lickbarrow* v. *Mason*, 2 T. R., 63, 70, hitherto — establishing and maintaining the doctrine that where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it.

It is believed that the doctrine contended for in the defence here would be mischievous beyond endurance.   Take for example that very numerous class of securities, — probate

bonds, — varying in amount as they do from less than one hundred dollars to many thousands, seldom executed in the presence of both parties, rarely becoming the subjects of litigation till after such a lapse of time that the details of the transaction have faded and become obscure in the memories of the actors ; what can be done to insure their validity, if the obligors are at liberty under the stimulus of impending loss to do away with their declaration of absolute delivery, (which they have caused to be subscribed in their own presence and allowed to be presented to the Probate Judge,) by some ill-remembered conversation about other proposed sureties whom they now claim as indispensable parties, no hint of which conversation has ever reached the officer who receives and approves the bond?

The simplest maxims of good faith forbid the effect which the defendants propose to give to their conversation among themselves. *In traditionibus chartarum non quod dictum, sed quod factum est, inspicitur.*

Upon a careful review of the cases cited in argument, and such others as have fallen under our notice, we feel bound to say that the position of the defendants is not maintained, either upon principle or by any sound authority. If there are cases that militate against the views here expressed, we are satisfied that they savor more of the growing looseness of commercial morality than of adherence to wholesome legal principles.

*Motion and exceptions overruled.*

APPLETON, C. J., KENT, WALTON and DANFORTH, JJ., concurred.