STATE OF MISSOURI TO USE OF WM. E. BOTHRICK, GUARDIAN AND CURATOR, ETC., Plaintiff in Error, *vs.* JABEZ H. POTTER, Defendant in Error.

1. *Bond—Surety—Agreement of principal to obtain co-surety—Delivery without —Liability of co-surety, notwithstanding—Estoppel—Curator's bond—Public policy.*—The agreement of a surety with his principal that the latter shall not deliver a bond till the signature of another be procured as a co-surety, will not relieve the surety of his liability on the bond, although the co-surety is not obtained, where there is nothing on the face of the bond, or in the attending circumstances, to apprise the taker that such further signature was called for in order to complete the instrument.

In such state of facts the surety, having invested his principal with apparent authority to deliver the bond, is estopped from denying his obligation to the innocent holder.

And testimony as to a contemporaneous parol agreement touching the condition on which the surety's name was obtained, is inadmissible to annul such obligation as shown by the written instrument.

And where the bond is that of a guardian or curator, and the estate of a minor is to be affected, to permit such testimony, in order to relieve the surety of his liability, would be subversive of public policy.

### *Error to Pettis County Circuit Court.*

The bond here sued on was given by James M. Turley, as principal, with J. H. Potter and Bacon Montgomery, as sureties to the State, as guardian and curator of the minor heirs of one J. J. Turley, and was filed in the county court of Pettis county and approved. Afterward, the heirs having become residents of Johnson county, William E. Bothrick was appointed guardian and curator by the probate court of the latter county. The defense set up by Potter to the suit was, that he signed with the understanding and on condition that the bond should also be signed by Bothrick, as surety, and that Turley agreed not to file the bond until Bothrick had signed it.

*Vest & Gantt*, for Plaintiff in Error.

The bond was not an escrow. In State *ex rel.* Moore vs. Sandusky (46 Mo. 377), Judge Wagner, quoting from Cutter vs. Whittemore (10 Mass. 442), says: "If there had been any agreement or condition at the time, that it should not be delivered

as their deed (that of the sureties), unless the third person named as obligor should also execute it, this would show that it was also delivered as an escrow." No other authorities are cited by Judge Wagner, and in Cutter vs. Whittemore only two authorities (2 B. & P., an English case, and 4 Cranch) are cited by the court. The case in 4 Cranch (Pawling against The United States) has been overruled by the Supreme Court of the United States, and the opinion stands upon the English authority alone, unsupported by any argument of the learned judge who decided the case. But unless the meaning of the word be misunderstood by the profession, a delivery of an escrow must be made to a third person (4 Kent, 454), and not to the obligor or co-obligor. (Deardoff vs. Foreman, 24 Ind. 492.)

The case of Linn County vs. Farris (52 Mo. 75) in which the opinion was delivered by Judge Adams, seems to ignore entirely the definition of an escrow. There the bond was delivered to the principal with the understanding that it was not to be delivered until certain parties had signed it as co-sureties, and it was held to be an escrow. The following cases are cited by Judge Adams in his opinion : State *ex rel.* Moore vs. Sandusky, *supra ;* Gasconade County vs. Sanders, 49 Mo. 192 ; Cutter vs. Whittemore, *supra ;* Pepper vs. State, 22 Ind. 399 ; Bagot vs. State, 33 Ind. 262 ; People vs. Bostwick, 32 N. Y. 445 ; Pawling vs. United States, 4 Cranch, 219 ; Duncan vs. United States, 7 Pet. 435 ; United States vs. Leffler, 11 Pet. 86 ; Seely vs. People, 27 Ill. 175. The case of Gasconade County vs. Sanders (49 Mo. 192), does not touch the point now under discussion. Pepper vs. The State (22 Ind. 399), is cited also by Judge Wagner in Ayres vs. Milroy (53 Mo. 522), and is said to contain "an exhaustive and elaborate review of the authorities on the question." The case has been distinctly overruled in Deardoff vs. Foreman (24 Ind. 481), in an opinion delivered on a motion for rehearing, which notices every decision then made in the United States on this question, and especially criticises the cases of Pepper vs. The State and the People vs. Bostwick (32 N. Y. 445.) The cases from 4 Cranch, 7 Peters and 11 Peters, cited

by Judge Adams, have been all overruled by the decision in Dair vs. The United States (16 Wall. 1), wherein Justice Davis says that the doctrine of estoppel applies to such a defense as the present.

In Virginia, Kentucky, Vermont, Maine, Indiana, Illinois and in the Supreme Court of the United States, the question at bar has been decided in our favor. (See also, 24 Grat. 202; Deardoff vs. Foreman, 24 Ind. 481; State vs. Peck, 53 Me. 284; Millett vs. Parker, 2 Met. [Ky.], 608; Taylor & Co. vs. Craig, 2 J. J. Marsh. 549; Bank of Commonwealth vs. Curry, 2 Dana, 143; Smith vs. Moberly, 10 B. Mon. 266; Passumpsic Bank vs. Goss, 31 Vt. 315; Dixon vs. Dixon, 3 Vt. 450, note by Judge Redfield, 3 Am. Law Reg., new series, 402; State vs. Pepper, 31 Ind. 76.)

*Snoddy & Bridges*, for Defendant in Error.

Where a deed is placed in the hands of another to be delivered after the performance of a certain condition, a delivery without its performance is not the act of the party and inoperative. Though signed and sealed, the deed is not his act—it is merely an *escrow*. (People vs. Bostwick, 32 N. Y. 445; State *ex rel.* Moore vs. Sandusky, 46 Mo. 377; Pawling vs. United States, 4 Cr. 209; ·Johnson vs. Baker, 4 Barn. & Ald. 440; Pidcock vs. Bishop, 3 Barn. & Cr. 605; Fletcher vs. Austin, 11 Vt. 447; Cutter vs. Whittemore, 10 Mass. 442; Linn Co. vs. Farris, 52 Mo. 75; Pepper vs. State, 22 Ind. 399; Ayres vs. Milroy, 53 Mo. 516; Preston vs. Hull, 23 Grat. 600; 2 Harr. 396; 11 Pet. 86.)

The bond might have been committed to a stranger under the same conditions that attached to it in the hands of Purdy. Certainly, in the latter case, the delivery would have been an *escrow*. And the same rule governs both cases. (Bibb vs. Read, 3 Ala. 88; State Bank vs. Evans, 3 Green [N. J.], 155; Carter vs. McCormick, 29 Mo. 464.) Lord Coke says: "In the delivery of a deed as an *escrow* two things are necessary: I, Words imposing the condition; 2, That the deed be delivered to

a stranger, and not to the party himself to whom it is made," showing that the word "stranger" is used in contradiction to obligee or covenantor. (1 Coke Litt. note L. p. 286.)

The case at bar does not depend on the probability which the character of the agent might furnish to the party receiving the instrument, that he had the power which he claimed, but upon the power actually conferred on him. Suppose the bond had been signed by defendant and left on his table with the intention of procuring the signature of Bothrick before delivery, and the principal had clandestinely abstracted it from the custody of defendant and presented it to the county court, and the same had been approved. The court would have received the instrument from the hands of the principal obligor, and the state of facts apparent to the court would be the same, yet it manifestly would not be the deed of defendant. In Perry vs. Patterson (5 Humph. 133) it was held that a bond, when delivered as an *escrow* to the principal obligor, and by the latter to the creditor, absolutely without condition, does not discharge the condition and constitute the delivery a valid delivery, although the creditor be absolutely ignorant of any condition. The court further observed, "The law upon this point is settled beyond controversy, and needs at this day no investigation."

The liability of a surety on a bond cannot be extended by implication beyond the terms of this contract. (State *ex rel.* Moore vs. Sandusky, *supra ;* State to use of Linn County vs. Farris, *supra.*) Where the co-surety's name is forged, the surety will not be held.

The same principle here invoked extends to promissory notes and other contracts not negotiable, or to negotiable contracts before negotiation. (Aude vs. Dixon, 5 Eng. L. Eq. R. 512 ; Lloyd vs. Howard, 1 Id. 227 ; Palmer vs. Richards, Id. 529 ; Leaf vs. Gibbs, 4 P. & C. 466.) But with regard to negotiable instruments after negotiation the rule is different. (Passumpsic Bank vs. Goss, 31 Vt. 315 ; Hatch vs. Searls, 2 Smale & Giff. 147 ; 1 Am. Law. C. 321, 322.)

Whether Bothrick's name was in the body of the instrument or not is immaterial. The question was one of power in Turley to deliver the bond ; and nothing short of an estoppel could preclude defendant from denying it. His leaving the paper in a condition which would permit Turley to assert plausibly that it had been signed by all the persons who were expected to become sureties, fails utterly to create an estoppel. The county court had the power to ascertain his authority, and should have done so. (The People vs. Bostwick, 5 Tiff. [32 N. Y.] 452, 453 ; Levitt vs. Adams, 3 Wend. 380 ; Bibb vs. Reed, 3 Ala. 88 ; State Bank vs. Evans, 3 Green [N. J.], 155 ; Preston vs. Hull, 23 Grat. 600 ; 2 Harr. 396 ; Davenport vs. Slight, 2 Dev. & Bat. L. R. 381 ; 2 Pars. Cont. 723 ; United States vs. Nelson, 2 Brock, 64, opinion by Ch. J. Marshall ; Harrison vs. Tiernans, 4 Rand. 177 ; Cleaton vs. Chambliss, 6 Rand. 86 ; 3 Am. Law Reg. n. s. p. 399, note of Redfield, J.)

Counsel proceeded to review cases cited *contra*, and contended that they were inconsistent, conflicting, and are neither sustained by the well settled principles of law nor the weight of authority.

SHERWOOD, Judge, delivered the opinion of the court.

We are to determine : Whether a curator's bond, regular in form, can be avoided at the instance of a surety, upon the ground that he had signed it under a conditional agreement, made at the time with the principal, that the latter was not to deliver the bond until the signature of a certain person had also been obtained, and that notwithstanding such agreement and in violation of it, the bond was delivered.

The question has been one prolific of litigation, and the conclusions reached by different tribunals have frequently exhibited no inconsiderable lack of uniformity. But it is thought that many decisions, which at first blush appear incapable of being harmonized, will be found, on more narrow examination of the controlling facts incident to each, to bear a closer resemblance than casual observance would, at the outset, lead us to suppose. In intimate connection with the subject under discussion, we are

asked to review some of our former decisions in order that it may be ascertained whether they will bear the test of a closer and more deliberate examination than hitherto bestowed—an examination commensurate, both with the importance of the topic involved and with the greater facilities now afforded for such investigation, in consequence of recent and elaborate adjudications, some of which were not accessible, or else were overlooked, at the time our own, now sought to be re-examined, were rendered.

In the case of the State vs. Sandusky (46 Mo. 377), the point in hand was not involved. There were neither the proper averments in the answer, in respect of a conditional delivery of the bond, nor if there had been such averments, was there any evidence adduced which could have been offered in their support; "the only real defense" was a denial by the defendant of his signature. Any remarks, therefore, in that case, relative to the matter now before us, cannot be held as possessing authoritative value. And the same may be said of Cutter vs. Whittemore (10 Mass. 442), referred to in the case just cited. So far as Gasconade County vs. Saunders (49 Mo. 192,) has relevancy to the present case, it is an authority favoring the position of the beneficiaries in his action; for the point is there conceded in argument that, "when the principal in a bond, or other person not acting as the agent of the creditor, fraudulently procures the names of sureties to a bond, and the creditor takes the bond and loans his money, without any knowledge of the fraud practiced on the sureties, he cannot be made to suffer by such fraud. Their remedy is against the party who defrauded them, and not against the creditor;" and the judgment of the trial court was reversed, because of failure to recognize the validity of the defense that the defendant's signature was procured by the fraud and forgery of the agent of the county.

Linn County and State to use, etc., vs. Farris (52 Mo. 75), gives full recognition to the doctrine of the conditional delivery of a bond by one co-obligor to another, and of the invalidity of such delivery when violative of previously imposed conditions. From the meager statement it does not appear whether or not the

officer who received the bond was cognizant of the facts afterward relied on as a defense. There, however, the name of one of the apparent sureties was forged ; but in the line of remark pursued in the opinion, no particular stress is laid on the forgery, only so far as its existence showed a failure of compliance with antecedent requirements ; and the decision is altogether based on the idea, that in consequence of the terms imposed by the surety not having met with performance, no valid execution of the bond had occurred, although, curiously enough, a remark of similar import to that already quoted from Gasconade County vs. Saunders, is indulged in. Now, if these episodal observations assert the true rule in relation to the rights of an ordinary creditor, who is not aware of, nor a participant in the fraud practiced by the principal on his surety, would it not seem to follow that a like rule should prevail where, under similar circumstances, the officer appointed for that purpose is the recipient of either an official bond, or of one for the direct payment of money ? May it not be asked with much pertinence, wherein the attitude of the county or State differs from that of a private individual in this regard, and may not those who assert the existence of an altitudinal difference in this respect, be called on to establish by something more than mere assertion, why the creditor should not "be made to suffer by such fraud," on the one hand, while the county or State *is* "made to suffer," on the other ?

In Ayers vs. Milroy, (53 Mo., 516,) a division of opinion occurred as to the method pursued in the discussion of that case, the majority opinion proceeding on the theory of conditional delivery to a co-obligor, while that of the minority concurs in the result upon the peculiar facts. There the suit was on a non-negotiable note, signed by the surety on the express condition, which was not complied with by the principal, that he would obtain the signature of another surety before delivering the note to the creditor. And it was held that these facts constituted a valid defense, and that the same rule was applicable to all instruments non-negotiable, whether notes or bonds. The conclusion reached was a correct one, whatever may be thought of the reasons on which it was

based, for it was conceded throughout the whole case that the plaintiff was apprised of the condition on which the surety was to be bound. Knowing this, the plaintiff acted in bad faith in his acceptance of the note, and therefore should have been denied a recovery on that ground alone, regardless of other considerations; and this last ground was the one which induced the concurrence of those who, disapproving of the reasoning employed, joined in the approval of the result. In both of the two preceding decisions it will be observed that the sole basis of the ruling is a lack of power in the co-obligor to make the delivery of the instrument in question. Other authorities relied on by defendant as sustaining the action of the court below will now be noticed, including those on which the cases just cited were based.

Pawling vs. United States, (4 Cranch, 219,) is to the effect that if a surety signs an official bond, and delivers it to his principal, on condition that others, whose names were inserted in the body of the bond, should also sign it, that this delivery of the bond only made it an escrow, and if the requisite signatures were not obtained, that the surety was not bound.

In Duncan vs. United States, (7 Pet. 435,) the bond also lacked completeness in a similar manner. It does not appear whether there was any defect or irregularity in the bond in suit in the case of the United States vs. Leffler, (11 Pet. 86,.) and the only point considered was, as to the competency of certain witnesses respecting the conditional execution of the bond. The circumstances under which the evidence was held competent are not set forth; and in all probability the facts were like those of Pawling vs. United States, *supra*, and it was controlled by that decision.

Seeley vs. People, (27 Ill. 173,) holds that where a party signs his name to a bond as co-surety with another, and such other's signature had been forged, the surety, supposing the signature to be genuine, will not be liable, but the case also, *arguendo*, condemns in pointed terms the doctrine which it is cited as upholding, and evidently proceeds upon the theory that to the surety not the slightest negligence was attributable.

In Leaf vs. Gibbs, (4 C. & P., 466,) the surety was to sign upon condition that his mother should do the same, but she re-

fused, and as the plaintiffs were informed of the terms on which the son's signature was obtained, he was held not liable, unless, knowing the facts, he had waived the objection.

Perry vs. Patterson, (5 Humph. 133,) was in its salient features similar to the one just mentioned. A compromise was effected between a debtor and the attorney of his creditor, whereby it was agreed that two sureties should sign a note with the debtor, and that this note when signed by sureties who were named and agreed to be received, should be accepted, and operate as a stay for twelve months of the judgment, for the amount of which the note was to be given. A blank note was accordingly prepared with three seals, which was signed by one of the sureties, on condition that the other intended surety should sign also. This the latter refused, but the attorney to whom the note had been delivered by the principal, never received the note in payment of the judgment, as he still insisted on having the two sureties, as per agreement. And besides, the note was not delivered to the attorney in execution of the agreement, "but merely lodged with him, till such time as the surety could be induced to sign it." So that the note was incomplete; it was never delivered; and the attorney with whom it was "merely lodged" knew all about the attending facts. The head-note of this decision is inaccurate and well calculated to mislead; there was no "ignorance of the creditor" of the circumstances, unless the knowledge of the attorney is to be deemed the ignorance of his employer. The remarks, therefore, as to the effect of the creditor's ignorance are wholly outside of the case, since the proof shows nothing of the sort.

Carter vs. McClintock, (29 Mo. 464,) simply declares that no delivery of a note occurs where the payee surreptitiously obtains possession thereof, and that he cannot maintain an action thereon.

Pidcock vs. Bishop, (3 Barn. and Cress. 605,) holds merely that where a creditor and his debtor have made a secret arrangement which, without the knowledge of the surety, increased his responsibility, this was a fraudulent concealment, of which the

creditor could not take advantage, and accomplished the surety's exoneration.

The gist of the decision in Lloyd vs. Howard (1 Eng. L. and Eq. 227,) is, that if a bill of exchange be delivered by A. to B. for a specific purpose, which the latter does not accomplish, but retains the bill till overdue, and then delivers it to C. without value, C. is not a *bona fide* holder, and cannot maintain an action against A. as an indorser. Palmer vs. Richards, in the same volume 529, was based on a different state of facts. The bill was indorsed by A. in order to have it discounted and delivered to B. for that purpose, who applied it to his own purposes, by depositing it prior to maturity as a security for money advanced, and held that the indorsement of A. bound him.

Aude vs. Dixon (5 Eng. L. and Eq., 512,) seems to establish that if a blank in a negotiable note be (contrary to a previous stipulation with a surety, that another surety shall sign, before delivery,) filled with the name of the party as payee who advances the money on it, the surety is not bound. The note there, however, would appear to have been incomplete, as a blank space was left where the intended surety was to sign. But if this circumstance was not taken into account, the decision is clearly contrary to the decisions of this court, and of other American tribunals. (1 Pars. N. & B. 111 and cases cit.)

10 Jur. N. S. is not accessible, but if we may rely on a report of the case of Swan vs. N. B. Australasian Co., (Id. 102,) the facts were substantially these : A. was induced by his broker to send him blank forms of transfer, which the broker filled up with numbers and descriptions of shares different from those of the company intended by A., being shares in the defendant's company, and by means of a duplicate key, which he had procured to be made without the knowledge of A., obtained certificates from a box of A's. necessary to perfect the transfers and also forged the names of the attesting witnesses, and it was held in an action against the company for damages, and for a mandamus to restore the plaintiff's name to the registry ; that the acts of the plaintiff were not such as estopped him from showing that the deed of transfer was a forgery.

In short, the ruling goes only so far as to assert that the combined acts of larceny and forgery on the part of the agent did not estop the plaintiff from the assertions of his rights ; and it would have been strange, indeed, had the ruling been otherwise, since it is plain to see that merely trusting blank forms of transfer to the agent did not enable him to perpetrate a fraud upon a third party, but in addition thereto it required a contemporaneous conjunction of two crimes in order to the fraud's consummation.

In Preston vs. Hall (23 Grat. 600,) the bond was incomplete on its face, lacking the name of the payee, and the single point decided was that parol authority would not authorize any one to fill the blank thus left in the absence of the principal.

Johnson vs. Baker (4 B. & Ald. 440) shows the instrument—a composition deed—to have been incomplete when delivered to one of the creditors to procure the signatures of the others therein named.

Fletcher vs. Austin (11 Vt., 447,) discusses the point of delivery, but there the bond displayed its own incompleteness in the lack of signatures corresponding with the names inserted in its body, and there the court expressly says: "If a bond contains the names of other obligors, and is delivered without the signatures of all, the obligee must inquire whether those who have signed, consent to its being delivered without the signatures of the others." Now, if the duty of inquiry on the part of the obligee has its origin in palpable omissions in the bond, would it not seem to follow with conclusiveness, that no inquiry is requisite where no defect exists.

The bond mentioned in State Bank vs. Evans (3 Greene, [N. J.] 155), was incomplete, in that it lacked the signature of Olden, one of the named obligors.

In Lovett vs. Adams (3 Wend. 380,) the only point in judgment was the propriety of the rejection of two co-obligors as witnesses ; but the occasion was improved to the discussion of other points. Besides, the report of the case clearly shows that nine sureties signed a bond for the payment of a certain sum of

money, and sent the bond to be delivered to the plaintiff on condition that previously arranged terms were complied with, whereby such sureties would be indemnified against the risks incident to their suretyship. The plaintiffs refused acceptance of these terms, and subsequently, by a new and different arrangement, entered into with five of the obligors (without the knowledge or consent of the remaining four) accepted the bond and then brought suit, not against the five who had, but against the four who had not, consented to such an arangement.

In Bronson vs. Noyes, (7 Wend. 188,) the sheriff, the recipient of the bond, was cognizant of the conditions upon which the surety signed, and in effect promised that those conditions should either meet with compliance or else other bail should be procured.

In Herdman vs. Bratten (2 Harrington, 396), the bond was plainly incomplete. That case was decided, however, on another point—the alteration of the bond by the erasure of certain names which were in the body of the bond, at the time of the signing in question occurred; and, moreover, the sheriff, to whom the replevin bond was executed, was apprised of the express condition on which the surety signed, and afterwards, it seems, erased the names of those whose signatures he was to procure.

In Bibb vs. Reid (3 Ala. 88,) the administration bond was lacking in nothing, and it was held that it was capable of delivery to a co-obligor as an *escrow*, and was invalid unless on performance of conditions; and some of the same authorities already examined were cited in support of the position.

The People vs. Bostwick (32 N. Y. 445,) is based on a portion of the authorities heretofore noticed. There was no infirmity patent on the face of the bond, and the case was discussed on the theory, both of the delivery of the bond to a co-obligor as an *escrow*, to await the fulfilment of prior requirements, and on that of estoppel, and the conclusion reached favoring the former view and relying on it, and opposed to the latter.

A result diametrically opposite to the one just announced, has been reached in Indiana, in which after an exhaustive examination and discussion of the authorities, it is held not only that one

surety is incapable of delivering a bond or other instrument of like nature to his co-obligor, as an *escrow*, but that the surety was bound regardless of the giving or disobedience of secret instructions, if the instrument was perfect on its face, and the co-obligor clothed thereby with apparent authority to deliver it.  And the case of Pepper vs. State (22 Ind. 399,) has been expressly overruled in Pepper vs. State, (31 Ind.,) when the cause came the second time before the Supreme Court.  Similar rulings had been also made in Deardorff vs. Foreman (24 Ind. 381 ; Blackwell vs. State, 26 Ind. 204, and Webb vs. Baird, 27 Ind. 368).

Bagot vs. State (33 Ind. 262,) does not militate against these rulings, though the case is very loosely and obscurely reported, and a great deal of unnecessary matter introduced. The substance of the case and of the point in judgment is this : that parol authority is insufficient to authorize one having no connection with an official bond to sign the name of a third person to such bond, unless the signing take place in the presence of him giving the verbal authority.  The opinion was delivered by Fraser, J., who was on the bench with Ray and Gregory, JJ., when all the cases subsequent to Pepper vs. State were decided, and who had delivered an emphatic opinion on petition for rehearing in State vs. Pepper, in which he explicitly concurred with his associates in upholding the doctrine announced by them in 24, 26 and 27, Ind. *supra*, and who were still his associates when Bagot vs. State was decided.  Under these circumstances, the assumption is a very bold one, that the Judge who delivered the decision in the case last cited, or those who concurred with him therein, intended to announce any doctrine variant from their prior conclusions. The rule thus enunciated is this : " that where the surety places the instrument, perfect upon its face, in the hands of the proper person to pass it to the obligee, the law justly holds that the apparent authority with which the surety has clothed him shall be regarded as the real authority ; and as the condition imposed upon the delivery was unknown to the obligee, therefore, the benefit of such condition shall not avail the surety."

And, to use the language of Fraser, J., in delivering the opinion of the court on motion for re-argument in State vs. Pepper, "the subject had been examined by all the judges in consultation to the extent of a critical inspection (to.a considerable extent repeated) of the cases cited, and of those referred to by all other courts, as supporting the ruling of this court in this cause when formerly here. The result has been, not only a clear conviction on the part of the whole bench, as expressed in the opinions in this and the Deardorff case, but also a wonder how, upon a thorough examination of the subject, any other conclusion could be arrived at.

It has doubtless been observed, that in nearly all the cases relied on by defendant, of which I have given the gist, the judicial utterances were mere *obiter dicta,* or else there was something apparent on the face of the bond evincing incompletion, or some attendant circumstances showing knowledge or its equivalent, on the part of the recipient of the bond, or other instrument, that its delivery was not to occur, except other signatures were first obtained, or other antecedent acts done of equal importance.

This is true of every case instanced from other States, except that of People vs. Bostwick, and Bibb vs. Reid, *supra,* the latter of which discusses only, and very briefly, the question of conditional delivery by one co-obligor to another; and that is the ground whereon the decision in People vs. Bostwick is chiefly based; and our own adjudications, as above seen, are exclusively based on that ground.

Did we care to press the point, it might not, perhaps, in a manner at all consonant with rudimentary definitions, be easy to explain how an instrument could be deemed an *escrow* unless delivered as such to a third person ; nor how, if an *escrow*, it could be incomplete. But we are content to waive the point, since it is not plainly necessary to the proper disposal of this case, being desirous of placing that case on broader grounds than those incident to a narrow technicality.

An estoppel *in pais* is said to arise when an act is done or statement made by a party, which cannot be contradicted with-

15—VOL. LXIII.

out fraud on his part, and injury to others, whose conduct has been influenced by the act or admission. (Lickbarrow vs. Mason, 2 T. R. 63, 70.) Here the surety who defends this action, had invested the principal with an apparent authority to deliver the bond ; and there was nothing on the face of the bond, or in any of the attending circumstances, to apprise the official who accepted it, that there was any secret agreement which should preclude the acceptance of the bond. And the surety is alone in fault in the matter, as, but for his unwarranted trust in Turley, the latter would never have had it in his power to occasion thé loss which the beneficiaries of this bond must suffer, if the defense made by the surety is successful.

Surely then a more opportune application of the language of Lord Holt in Hern vs. Nichols (1 Salk. 289), could not occur, than to the case before us, that *" seeing that somebody must be a loser by this deceit, it is more reason that he that employs and puts trust and confidence in the deceiver, should be a loser than a stranger."*

If the doctrine of estoppel would not apply here, might not the significant query well be asked ; to what state of facts would it apply ?

Now, the rule is well settled, that if I stand by, and, without objection, see another dispose of my property, I cannot be afterward heard to assert ownership in it; and, this, in accordance with the maxim : " That he who did not speak when he should have spoken, shall not be heard, now that he should be silent.".

In such instances the question of power to make the sale and pass the title is one not worthy of a moment's consideration. The only proper inquiry is ; Did I, by my silence, give the purchaser reason to infer that his vendor had the right to dispose of the property ? If so, then, upon every principle of fair dealing, the true basis of such estoppels, I am estopped to assert anything to the contrary of what my silence might naturally be inferred to indicate, and the hypothetical case is by no means stronger than the real one under discussion. For the officer to whom was committed the duty of taking the bond had literally conformed to

that duty, by the acceptance of an instrument perfect in every particular, and emanating from the proper custody ; and he had, therefore, the right to infer, and it was the defendant's conduct which gave origin to this reasonable inference, that the delivery of the bond was in conformity to the usual course of such transactions.

A stronger case of estoppel could not well be conceived than this, where a surety, after standing by for years, and allowing the patrimony of orphans to be squandered, now steps in at this late day, and asserts that, owing to a hitherto undisclosed arrangement, he, although apparently bound for any default of his principal, was not in fact bound.

This subject of estoppels, and under what circumstances they arise, considered with reference to bonds, has recently undergone discussion in the national Supreme Court, and the same result has been reached as above, and the ruling made in Pawling vs. United States, which is the basis of all subsequent kindred decisions in this country, is explained on grounds entirely satisfactory, and similar to those already adverted to.   (Dair vs. United States, 16 Wal. 1.)

To the same effect are exhaustive and elaborate discussions in Virginia and Maine.   (State vs. Peck, 53 Me. 284 ; Nash vs. Fugate, 24 Grat. 202.)

But there are other elements which also enter into a proper consideration of this cause, and which, on that account, should not be ignored.   Are not sureties sufficiently solicitous about escaping from what they regarded, when signing, as remotely contingent possibilities, without opening new avenues to facilitate their eager escape?

And would it not be acting in flagrant violation of one of the most familiar rules of evidence, and of the very spirit of the law itself, to permit formally executed securities to be annulled by testimony of some contemporaneous parol agreement?  If, under ordinary circumstances, such testimony would be objectionable would it not be doubly obnoxious in cases like this one, where the agreement is kept sedulously concealed from the other contracting party?

But one answer—an emphatic affirmative—can be returned to these questions.

Again, it concerns the State, that the heritage of the helpless, confided to the protection of her courts, should not suffer detriment. The consequences would be fraught with disaster, and it would be subversive of the plainest dictates of public policy if sureties in such cases were permitted, by means of some "ill-remembered conversation," or some occult understanding, never disclosed but under the shadow of impending loss, to escape liabilities which their own solemn deed and recorded specialty announces them to have incurred.

These reasons appear to us conclusive that the following declaration of law asked by plaintiff should have been given:

"Although the court may believe from the evidence that the defendant, Jabez H. Potter, may, at the time of his signing the bond sued on, have had the agreement with James M. Turley, the principal in said bond, that said Turley was not to file said bond, or deliver the same, until Wm. E. Bothwick also executed said bond as surety; yet, if said bond was afterwards, in violation of said agreement, filed by said Turley in the county court of Pettis county, Missouri, and was approved by said court, and said bond was, when so filed and approved, complete and regular upon its face, and the officers of said court had no notice of said agreement between said Turley and said Potter, then such agreement constitutes no defense to this suit, and the court must find for the plaintiff," and that the one of a contrary effect should have been refused. In so far as our former decisions are in opposition to this view they are overruled.

Judgment reversed and cause remanded. Judges Napton and Hough concur. Judge Wagner absent.