SULLIVAN v. WILLIAMS.

1. WRITTEN INSTRUMENT—PAROL EVIDENCE.—Testimony is admissible to explain the circumstances under which the bond in suit was executed, the terms of the bond itself not being thereby affected.

2. ATTACHMENT—RELEASE—BOND.—In action against sureties on a bond executed by arrangement between the parties to secure the release of an attachment, a nonsuit should not be granted, on the ground that such bond was not justified, witnessed, probated, and filed, as required by statute, and the rule of court as to bonds provided by statute for release of an attachment.

3. BOND—SURETIES—CONDITIONS.—Where a bond given to secure the release from attachment of partnership assets and the individual assets of two of the partners (two others being out of the State), mentions the names of all the partners as obligors, it is immaterial whether the obligee was informed or not that the sureties had signed the bond upon the condition that the two absent partners should also sign.

4. SURETIES—FORGERY—INNOCENT OBLIGEE.—While sureties are favored by law, nevertheless, where sureties signed their names to a bond—whether joint or several, matters not—given to procure the release of an attachment against a partnership, the names of all the partners being written into the body of the bond, but two of them not signed when the sureties signed, and the bond being left with the partners, who had signed, to procure the signature of the other two, and the bond was afterwards delivered to the innocent obligee with the names of these two other partners subscribed thereto, the sureties are estopped from showing that the names of such other two partners were forged when the bond was delivered by the partners to whom the sureties had entrusted its delivery, and, therefore, that the bond was not a binding obligation upon them, the sureties. MR. CHIEF JUSTICE McIVER *dissenting.*

Before WITHERSPOON, J., Greenville, April, 1894.

Action by W. E. Sullivan against James T. Williams and Alexander Stuart, commenced July 28, 1892. The bond sued on was as follows:

Know all men by these presents that we, George W. Susong, W. A. Susong, A. E. Susong, James H. Rumbough, and D. L. Boyd, known as Susong & Co., non-residents in South Carolina, and Alexander Stuart, residing in Greenville city, State of South Carolina, and a freeholder in said State, and James T. Williams, residing in Greenville city, State of South Carolina, and a freeholder in said State, are held and firmly bound unto W. E. Sullivan, of said State, a creditor suing the said Susong & Co., who has prosecuted attachment proceedings against the

said Susong & Co., on the ground of their non-residence in said State, in the sum of twenty-one thousand and fifty dollars, to be paid unto the said W. E. Sullivan, his certain attorneys, executors, administrators, and assigns, to which payment well and truly to be made and done we bind our heirs, executors, and administrators, jointly and severally, by these presents. Sealed with our seals, and dated this 27th day of July, A. D. 1887, and in the 112th year of the American independence.

Whereas a warrant of attachment has been issued on the application of the said W. E. Sullivan against said Susong & Co., as non-resident debtors, directed to the sheriffs of the counties of Aiken, Edgefield, Abbeville, Laurens, and Greenville, said State, commanding them to attach and safely keep all the property of the said Susong & Co. within their respective counties, consisting especially of the roadbed, right of way and franchises of the Atlantic, Greenville and Western Railway Company within the counties above named; also, of about twenty thousand dollars of township bonds, deposited in the Greenville National Bank, of Greenville, said State; also, real estate of said George W. Susong, in the town and county of Greenville, said State; also, real estate of said D. L. Boyd, in the town and county of Greenville, said State; and all other property, both real and personal, in the hands, possession, or control of said Susong & Co. or any of them, or their agents or servants, in the several counties above named, or so much thereof as may be sufficient to satisfy the demands of the said W. E. Sullivan, the creditor plaintiff, amounting to ten thousand five hundred and eighteen and 36-100 dollars, with interest, together with all the cost and expenses.

Now the condition of this obligation is such, that the above bounden Susong & Co., Alexander Stuart, and James T. Williams shall and will on demand pay to the plaintiff creditor, to the aforesaid W. E. Sullivan, the amount of judgment that may be recovered against the said Susong & Co., defendant debtors in the action brought by said W. E. Sullivan against the said Susong & Co., in the Court of Common Pleas for Aiken County, for ten thousand five hundred and eighteen and 26-100 dollars, then this undertaking shall be void and of none effect, otherwise to remain in full force and virtue.

Signed, sealed, and delivered in the presence of

W. C. Benet, M. F. Ansel, as to G. W. Susong, Boyd and Rumbough; G. G. Wells, as to Alex. Stuart and Jas. T. Williams; R. J. Stokeley, as to the two last.

G. W. Susong. [L. S.]
Alex. Stuart. [L. S.]
Jas. T. Williams. [L. S.]
D. L. Boyd. [L. S.]
Jas. H. Rumbough. [L. S.]
W. A. Susong. [L. S.]
A. E. Susong. [L. S.]

State of South Carolina,
County of Greenville.

We, the above named Alexander Stuart and James T. Wil-

liams, do hereby swear that we are together worth the amount
of the above bond, over and above all liabilities and homestead
exemption.                                    ALEX. STUART.
                                            JAS. T. WILLIAMS.
    Sworn to before me, this July 27th, 1887.
            A. J. MOSELEY, [SEAL] *C. C. P. and G. S.*
    We approve the within bond, this August 1st, 1887.
                                A. J. MOSELEY, *C. C. P.*
                                M. F. ANSEL.


*Messrs. Haynsworth & Parker,* for appellants.


*Messrs. Henderson Bros.* and *Cothran, Wells, Ansel & Cothran,*
contra.


April 15, 1895.   The opinion of the court was delivered by

MR. JUSTICE POPE.  W. E. Sullivan, as plaintiff, on the
2d day of August, 1892, instituted an action against James
T. Williams and Alexander Stuart, as defendants, in the Court
of Common Pleas for Greenville County, in this State, to re-
cover judgment against said defendant for the sum of $11,447,12,
with interest from 14th day of July, 1890, on $10,882.21, and
for costs.   The action came on for trial before his honor, Judge
Witherspoon, and a jury, in such court on the 29th day of
March, 1894, and resulted in a verdict for the plaintiff for
$14,274.07.   After entry of judgment thereon, the defendants
appealed to this court.

    The plaintiff, in his complaint, as his cause of action, sub-
stantially alleges that Susong & Co., composed of George W.
Susong, W. A. Susong, A. E. Susong, James H. Rumbough,
and D. L. Boyd, were indebted to him in the year 1887 in the
sum of $10,518.26, and that immediately thereafter he brought
his action against such firm for the collection of his said debt
in the Court of Common Pleas for Aiken County, in this State.
That inasmuch as said defendants, Susong & Co., and every
partner thereof, were non-residents of this State, but as the firm
and two partners thereof had real and personal estate within
the counties of Aiken, Edgefield, Abbeville, Laurens, and Green-
ville, in this State, such plaintiff procured to be issued, in his
said action, by the clerk of the Court of Common Pleas for

Aiken County, a warrant of attachment against the property of said firm of Susong & Co., and of the two defendants, George W. Susong and David L. Boyd, as members of said firm of Susong & Co., within said counties, and that thereunder the sheriff of Aiken, Edgefield, Abbeville, Laurens, and Green ville Counties, respectively, did attach such property of Su song & Co., and such property of George W. Susong and David L. Boyd, within their respective counties. That when this was done, thereupon an agreement was entered into between W. E. Sullivan and Susong & Co., whereby, in consideration of a bond being made by the members of the firm of Susong & Co., with James T. Williams and Alexander Stuart as sureties, in the penal sum of $21,050, conditioned that they would, jointly or severally, pay whatever judgment might be recovered by the said W. E. Sullivan in his action against Susong & Co., such attachment of the property of Susong & Co., and of the said George W. Susong and David L. Boyd, were released. That W. E. Sullivan, in his said action against Susong & Co., recovered a judgment on circuit, which was affirmed on appeal to the Supreme Court, for $11,375.62, with interest from July 14, 1890, or $10,882.21, and also $61.50 as costs of appeal, which said sums and every part thereof the said Susong & Co., and the partners thereof, have not paid. And that upon de mand therefor upon the said James T. Williams and Alexan der Stuart, they, each, have refused payment.

The defendants, James T. Williams and Alexander Stuart, in their answers, admit that George W. Susong, W. A. Susong, A. E. Susong, James H. Rumbough, and D. L. Boyd, copartners in business as Susong & Co., were non-residents of this State in 1887, when the action of Sullivan against them was begun; that Susong & Co., being indebted to plaintiff, Sullivan, as stated by him, said Sullivan, on 17th June, 1887, made application for writs of attachment against the real and personal estates of George W. Susong, W. A. Susong, A. E. Susong, James H. Rumbough, D. L. Boyd, and Susong & Co., as non-resident debtors, and that such application for attachments were regu lar in all respects; that such attachments were issued by W. M. Jordan, Esq., as clerk of the Court of Common Pleas for

Aiken County, in this State, as hereinbefore stated; that W. E. Sullivan, as plaintiff, in his said action against the said George W. Susong, W. A. Susong, A. E. Susong, James H. Rumbough, and D. L. Boyd, composing the firm of Susong & Co., as defendants, obtained his judgment against said defendants in the Court of Common Pleas for Aiken County, S. C., on 14th July, 1890, for the sum of $11,375.62, as hereinbefore stated; and that Jas. T. Williams and Alexander Stuart are residents of this State. But these defendants *denied* that the sheriffs of Aiken, Edgefield, Laurens, Abbeville, and Greenville Counties, respectively, did attach certain property of Susong & Co. within their respective counties; that on the 27th day of July, 1887, in order to discharge the attachments in question, the said W. E. Sullivan and Susong & Co. did come to an agreement whereby upon the execution of a bond in favor of W. E. Sullivan, under the hands and seals of the several partners composing the firm of Susong & Co., dated 27th July, 1887, and delivered on 1st August, 1887, to the proper officers, such attachments were released; that upon the delivery of said bond, the said attachments were duly discharged, the attached property mentioned in the bond released, and the said bond then delivered by the said officers to the plaintiff; and that by the bond given by these defendants they obligated themselves, jointly and severally, in the penal sum of $21,050, for the payment to the plaintiff of such judgments as plaintiff might recover in his action against Susong & Co.

These defendants, Williams and Stewart, in their answers, allege substantially, as a second defence, that in the body of the bond referred to in the complaint (the bond given in attachment proceedings), the names of George W. Susong, W. A. Susong, A. E. Susong, James H. Rumbough, and D. L. Boyd, are set out as principals, while the names of James T. Williams and Alexander Stuart only appear as sureties; that when presented to them (Williams and Stuart), George W. Susong was the only name of said principals which had then signed said bond; that these defendants signed said bond upon the distinct understanding that it should be executed by all the persons named in its body, before it should be delivered or

filed, to be used as a basis of an application to discharge the attached property, and that such execution should be evidenced and proved in due form of law; that after signing said bond, these defendants did not see it again until a few weeks before the commencement of this action; that they are informed and believe, that the names of W. A. Susong and A. E. Susong, which appear as signers thereof, were not written there either by themselves or by any other person duly authorized so to do, and that such W. A. and A. E. Susong now dispute their liability upon said bond, and refuse to be bound thereby; that the other persons named as principals on said bond are insolvent, but that W. A. and A. E. Susong then were, and now are, men of considerable wealth. That these defendants knew of their means at the time they signed the said bond, and the knowledge that they must execute said bond before it should become effective, was what induced these defendants to sign the same; that the execution of said bond on the part of the persons named as principals was not proved or acknowledged as required by law, nor was said bond approved by the clerk of the court for Aiken County, when these defendants had a right and did expect that these formalities should be complied with before the bond should become effective, and that they did not and would not have waived the same; and that if the plaintiff accepted said bond without a compliance with the law in said respects, all damages resulting therefrom are attributable to his own negligence, and not to these defendants; that these defendants signed the said bond with the understanding that when it should be executed by all persons named therein as obligors, and after all persons named as defendants in Sullivan *v.* Susong & Co. had appeared in such action, it should be used in an application on the part of the principals to the officer who had issued the attachment, or the court, for an order discharging the property from such attachment, and was for such purpose alone that these defendants signed the said bond. No such application was made either to the officer who issued the attachment, or to the court, for an order discharging the attached property, and no such order has been passed; that if the attached property has ever been discharged from said attachment,

it was by the voluntary act of the plaintiff, and not in the manner provided by law and contemplated by these defendants; and these defendands deny that they ever consented to be bound by said bond, except upon the conditions set forth above, all of which the plaintiff was fully advised of by the recitals of the said bond and the provisions of law, and was otherwise informed by these defendants. They allege that all these provisions were important and material to their protection on their relation as the sureties upon said bond; that they deny that they authorized delivery of said bond in its present condition, and they allege that said bond is void and of no effect.

When the cause was being tried, certain testimony was offered by the plaintiff which on objection was ruled incompetent by the trial judge, and testimony was offered by the defendants which upon objection was ruled incompetent by the trial judge. Exceptions to such ruling were duly noted, and these exceptions form a part of defendants' grounds of appeal. The defendants moved for a nonsuit, which motion was overruled. This furnishes an additional basis for an appeal. Lastly, the defendants presented sundry requests to charge, and whenever these were declined by the Circuit Judge, an appeal was based upon such refusal. The following are the grounds of appeal:

1. Because his honor, the presiding judge, erred in not granting the nonsuit requested by the defendants for the following reasons: (a) Because, we respectfully submit, that under the evidence the bond sued upon in this action, so far as it affects these defendants, must be deemed a statutory obligation given in pursuance of statute, for the purpose of effecting a discharge of the attachment referred to in the complaint, and the said bond had not been used in.the manner contemplated by statute or by the defendants herein at the time of the execution thereof, in that the bond was never delivered to the clerk of court of Aiken County, as contemplated by the statute and by the defendants, and was never received, accepted or filed by said clerk. (b) Because the signatures of the makers of said bond, and more particularly of W. A. Susong and A. E. Susong, were never probated or acknowledged in like manner as deeds of real estate, as required by the rules of the Circuit Court in this

State, and such bond could never, therefore, have been lawfully received, accepted or filed by said clerk. (c) Because even if said bond, as contended by plaintiff, had, by agreement between the plaintiff and the principals therein, been diverted from the statutory course, and had by such agreement been delivered to the plaintiff instead of said clerk, and if the requirements of law as to the manner of execution and the filing and accepting by the clerk had been waived by the said principals, such agreement and waiver could not affect these defendants unless they themselves had notice thereof before delivery of said bond, or unless the defendants waived the said requirements and assented to the use of said bond in a manner not contemplated by statute; it being submitted that as to these defendants the said bond must be presumed the statutory obligation, in the absence of testimony that these defendants had knowledge of a use not contemplated by statute and assented thereto, and of this there is no evidence. (d) Because there was no evidence tending to show that the bond was executed by W. A. Susong, or A. E. Susong, or by any one by them authorized.

2. Because his honor erred in allowing the introduction of the telegram of W. C. Benet to Henderson Bros., and of their reply to the same; also, in admitting the testimony of M. F. Ansel as to transactions between W. C. Benet and himself—it being submitted that all this testimony was irrelevant and incompetent as tending to convert the said bond from a statutory obligation, which those defendants had a right to presume it was, into a voluntary obligation, there being no testimony showing that this was "brought home to defendants."

3. Because his honor erred in excluding the testimony of Mrs. A. E. Susong when first offered, to the effect that the signature of A. E. Susong to the said bond was a forgery.

4. Because his honor erred in holding that there was nothing on the face of said bond to give sufficient notice to the plaintiff herein, or to Ansel and Mosely, his agent, that the defendant herein had signed said bond upon condition that W. A. and A. E. Susong would also sign the same, and in excluding, therefore, the evidence of A. E. Susong, to the effect that he

had never signed the said bond, but that his signature thereto was a forgery.

5. That his honor erred in holding that the defendants could not avail themselves of the forgery of W. A. and A. E. Susong to said bond unless they show that the plaintiff had notice of such forgery, or of all the facts concerning it; and he, therefore, erred in excluding the testimony of Mrs. A. E. Susong as to said forgery.

6. Because his honor erred in holding that no testimony, and more particularly the testimony of Mrs. A. E. Susong, could be introduced to prove the signature of A. E. Susong to said bond, notwithstanding the fact that the rule requiring the probate or acknowledgment of the signatures to said bond had not been complied with, and, therefore, the palming off of a forged signature to said bond rendered probable, or at least more possible, in consequence of the neglect of plaintiff or his agents in accepting said bond uncompleted according to law.

7. Because his honor erred in holding that the testimony of the defendant, James T. Williams, did not disclose any condition between himself and Geo. W. Susong, D. L. Boyd, and James H. Rumbough, to the effect that the bond was not to be delivered until signed by W. A. and A. E. Susong; and that the names of said W. A. and A. E. Susong, appearing in the face of the bond as co-makers thereof, he erred in excluding the testimony of Mrs. A. E. Susong and other testimony offered by these defendants to the effect that the said A. E. Susong never signed the bond, and that his signature thereto was a forgery.

8. Because his honor erred in holding that the condition made with Boyd, Rumbough, and G. W. Susong by Jas. T. Williams, prior to his signing said bond, to the effect that he would only sign on condition that W. A. and A. E. Susong also signed said bond, was not brought home to the plaintiff by the testimony of Jas. T. Williams, and, therefore, in excluding the testimony of A. E. Susong when offered the second time, whereas he should have submitted that question to the jury.

9. Because his honor erred in excluding testimony offered by

32—43

these defendants to the effect that the signature of A. E. Susong, as it appears on the said bond, bore on its face evidence of forgery, which should have excited the inquiry of plaintiff or his agents before they accepted said bond.

10. Because his honor charged the jury: "If you conclude from the evidence that there was any agreement between Susong and these two parties here, that cannot bind or prejudice the rights of the plaintiff (Sullivan), unless it was made to appear that it was brought home to Sullivan, or unless this defendant signed it with the condition that it was signed by W. A. and A. E. Susong, and this condition was brought home to the plaintiff."

11. Because his honor erred in refusing to charge, as requested by the defendant: "That if a surety is called upon to sign a bond given for the purpose of affecting a discharge of attachment, his contract is presumed to be the statutory bond for that purpose, unless there appears on the face of the bond something to warn the surety that the bond is to be used for a purpose and in a manner not contemplated by statute."

12. Because his honor erred in refusing to charge, as requested by these defendants: "That the bond sued upon in this action has nothing on its face to warn a surety that it is not the bond contemplated by statute to procure a discharge of an attachment. And in that case, unless the jury believe from the evidence that the sureties, the defendants in this action, at or before the signing of said bond, had information of the proposed use of such bond in a manner and for a purpose not contemplated by statute, the defendants in this action are presumed by law to have obligated themselves only in the manner evidenced by their bond when construed in connection with the laws of this State, and the rules of this court having reference to such bonds."

13. That his honor erred in refusing to charge these defendants' fourth request to charge, and in holding that whilst such request stated correct principles of law, they had no application to this case, such request being as follows: "That section 263 of the Code, the section having reference to the giving of bonds for the purpose of discharging attachments, contemplated that

such bond shall be used on an application to the court or officer who issued the attachment for a discharge of the same. It contemplates delivery to, and approval by, the court or such officer."

14. That his honor erred in refusing to charge defendants' fifth request, and in holding that while such request stated correct principles of law, it had no application to this case, such request being as follows: "That the attachment in the present case was issued by the clerk of the court of Aiken County, so that if the provisions of the act had been followed, the bond would have been delivered to, and approved by, him or the court."

15. That his honor erred in refusing to charge these defendants' sixth request to charge, and in holding that whilst such request stated a correct proposition, it would not affect this case or, in other words, it would not discharge the liabilities of these defendants on this bond, that request being as follows: "That rule of the Circuit Court provides: 'All bonds and undertakings shall be duly proved by a subscribing witness, or acknowledged in like manner as deeds of real estate, before the same shall be received or filed.'"

16. Because his honor erred in refusing to charge these defendants' seventh request to charge, and in holding that whilst such request stated correct principles of law, it had no application to this case, such request being as follows: "Under this rule it would have been necessary before this bond could be lawfully received by the officer issuing the warrant of attachment or the court, that its execution should be proved by the oath of a subscribing witness or acknowledged in like manner as deeds of real estate. It would have been the duty of the officer or the court before receiving the bond to see that this requisite had been complied with, and to have declined to receive it unless such proof of its execution had been furnished."

17. Because his honor erred in refusing defendants' eighth request to charge, to wit: "That the provision of law contained in such rule is intended for the protection of all persons interested in the due execution of the bonds or undertakings made in the course of judicial proceedings; that it is for the protec-

tion of the obligee of the bond, but also for the protection of sureties therein, tending to preserve to those signing such bonds their right of contribution from, or exoneration by, those whom they have a right to expect will sign such bonds with themselves, and serving to protect the sureties signing from frauds, by preventing or making less probable the forging the names of others whom they in law had the right to expect would sign such bond before it would be binding on themselves."

18. That his honor erred in refusing these defendants' ninth request to charge, to wit: "That if the jury believe from the evidence that the defendant had no knowledge or information that this bond was to be used for the purpose and in the manner not contemplated by statute, and did not assent to such use, then their liabilities thereunder will be determined only as though this bond were a statutory bond, given for the purpose of discharging an attachment. In such case, if the bond was not delivered to the clerk of the court of Aiken County or to the court, and was not proved by the oath of a subscribing witness, or acknowledged in like manner as deeds of real estate, and was not filed with the clerk of the court for Aiken County, if none of these things were done, then the provisions of law have not been complied with, and the bond is void as to these defendants, unless the jury find from the evidence that they waived the requirements of compliance with these conditions."

19. Because his honor erred in refusing to charge these defendants' nineteenth request to charge, and whilst admitting the effect of the proof referred to in such request, saying: "I hold it not necessary to have such on this bond." Said request being as follows: "In determining this question of negligence, in case you conclude that the bond was so entrusted by these defendants, you must consider all the circumstances surrounding the case, and in this connection I charge you that the provisions of law requiring all such bonds to be proved by the oath of the subscribing witness before they should be received, is calculated to prevent the palming off of a false signature, and the defendants had the right to expect that such proof should be made before the bond was received."

We will discuss these exceptions in the following order:

*First.* The admission by the trial judge of testimony in behalf of plaintiff excepted to by defendants. *Second.* The denial of defendant's motion for a nonsuit. *Third.* The refusal by the trial judge to admit certain testimony offered by the defendants. *Fourth.* The refusal by the trial judge to charge certain requests presented by the defendants.

*First.* The plaintiff offered to show the circumstances attending the execution of the bond which procured the release of the property attached. To this the defendants objected. 1 The bond was approved by Mr. Ansel, a member of the Greenville Bar. It was in the handwriting of Mr. Benet, an attorney at that time practicing at the Greenville Bar, and as such was the attorney of Susong & Co. The testimony was intended to explain these matters. Such testimony in no wise impinged upon the terms or provisions of the bond itself. We cannot see that it was incompetent. Hence the second ground of appeal is dismissed.

*Second.* At the close of plaintiff's testimony, defendants moved for a nonsuit, which was refused. Was this error? The proposition that the Circuit Judge should not grant a 2 nonsuit if there is any testimony, legal testimony, to support plaintiff's cause of action, is admitted on all hands here. But the question presented by defendants is that attachment proceedings are purely the creature of statute; that such attachment proceedings under the statutes of this State may be released by the giving of a bond or undertaking in double the amount sued for, with two sureties, who shall justify by the clerk of the court in the county where the action is pending, or by a judge in such action. And further, that Rule 66 provides that, before such bond can be filed, the same shall be approved by the clerk who issued the attachment, and also shall be probated, as is required of deeds to real estate before being recorded, to wit: by the affidavit of one of the subscribing witnesses. That these defendants being only sureties had the right to insist as a condition precedent to any liability thereunder that this bond should be subjected to the requirements of the statute in the particulars before recited, and especially that the release of the property attached should have

been made by the clerk at Aiken, or a judge, and that as the testimony of the plaintiff failed to show affirmatively such a compliance with such statutory requirements, the defendants were entitled to a nonsuit.   We think this position is untenable in the case at bar.   There is no doubt but that the law in existence at the time of the creation of a contract and pertaining thereto, enters into the obligation as a part thereof, but appellants overlook the fact that at the time of the execution by them of this bond, the law in this State allowed such proceedings in an attachment to be released so far as property attached was concerned, by a bond at the common law.   Plaintiff in his proof did not show that such release was under any order of court.   On the contrary, he showed that the attachment was released by Mr. Ansel, as the agent of the plaintiff.   The first ground of appeal must be dismissed.

*Third.* Defendants sought to introduce testimony to show that the bond in question was signed by the defendants upon the express condition that A. E. Susong and W. A. Susong also should sign the same, but the trial judge ruled such testimony incompetent, unless the fact of such signing by the defendant, on condition that W. A. and A. E. Susong each should sign the same, was brought home to the plaintiff himself, or some one representing him.   Was this error on the part of the judge?   It is always better to have the circumstances of the case before us when we are called upon to pass upon a question of law which is to govern the solution of such a contest.   In the case at bar, George W. Susong and D. L. Boyd were in the city of Greenville, as was also Rumbough, but the other two members of the firm of Susong & Co. lived in East Tennessee.   All the property attached was in this State, and the proceedings in attachment under which the firm assets as well as the property of the two partners, George W. Susong and D. L. Boyd, were located in this State, and the action in which the attachment was procured being in a State court, was limited to the State's territory.   Under these circumstances, George W. Susong sought out James T. Williams and Alexander Stuart, and represented to them that he would have to execute a bond to secure the release of such firm assets

as well as the property of two of the firm from this attachment. No one else was present when this application to Williams and Stuart to become sureties was made. Both Williams and Stuart contend that they agreed to become sureties for the firm upon a distinct understanding that A. E. and W. A. Susong would become obligors thereon. Confessedly no notice of this condition was imparted to Sullivan, or any agent of his. We do not hesitate to say that if this was all in the case, we would say the judge was right; but this is not all, for the bond itself said that W. A. and A. E. Susong was each one member of the firm of Susong & Co., and each one was therein secured as an obligor. From this view of the case, it was immaterial that Williams and Stuart acquainted Sullivan or his agent with the condition upon which they signed; and thus we are met with the

Fourth subdivision. Was it competent for Williams and Stuart to prove that the names of W. A. Susong or A. E. Susong were forged to such bond? That this is a joint and several bond, in our judgment is immaterial, for the effect of its being joint or several would only relate to the remedy, namely, the ability of Sullivan as obligee to bring his action against the obligors jointly or severally upon the happening of the condition to the bond. It would not extend so as to fasten a liability upon each obligor named in and signed to the bond, whether such signatures were forged or not. We mean this—that whether the liability of the obligors to this bond be joint or several, does not reach the question which has to be decided in order to hold these sureties liable. It is a far different and more serious question, and one which has caused very deep concern to courts in their effort to settle the law governing such a matter, in a manner that will protect sureties and at the same time preserve the rights of obligees. It is not to be wondered at, that there has existed a contrariety of opinion amongst courts on this subject, but nevertheless it is to be deplored as adding to the criticism that the law is uncertain.

We may begin the discussion by admitting that sureties are favored in the law. But this is true only to the extent that such sureties are entitled to all the protection flowing from the negligence, fraud or misconduct of the obligee, and to stand

on their contract "*strictismi juris*," and not that they are not
to be treated as original promisors along with their principals,
being debtors from the beginning. "He must see that the debt
is paid, and he is held ordinarily to know of every default of
his principal." Bayliss on Sureties and Guarantors, at page 5.
Of course, the rights and duties are held different in the law
as to negotiable and unnegotiable instruments. On the former,
his liabilities are to be determined under the law merchant; in
the latter, mainly under equitable principles. Under such
unnegotiable instruments as bonds and other specialties, the
pivotal instrument is the delivery of the instrument, for around
this as a centre revolve conditions that will be respected, no-
tice of conditions in the instrument itself, and such like de-
fences. In the case at bar, the sureties seeing in the body of
the bond the names of George W. Susong, D. L. Boyd, J. H.
Rumbough, A. E. Susong, and W. A. Susong, as obligors
along with their own, Williams and Stuart, were clothed by
law with the right to insist that the names of all these should
appear as signers of the bond before any liability on their part
attached. Not that they could insist in a private agreement
with any of their co-obligors that any other names than those
named in the bond should sign to make the obligations binding
upon them, for it made no difference what private agreements
they had with their co-obligors to limit or fix their liability
under the bond, unless such private agreements should be
communicated to the *obligee* or his agents. But the obligee
and his agents were bound at their peril to see that the names
of every person set out in the bond should sign the same before
such bond clothed the obligee with an enforcible contract
against the surety.

This, however, being admitted, does not settle the equities
between the obligee and the sureties under the bond here. It
seems that after George W. Susong signed the bond in question,
and without waiting for any other signatures, these two sureties
signed the same, and justified that they were worth the penalty
of the bond, $21,050. Of course, it will not for a moment be
contended that such a premature act on their part made them
liable; it is fixed law that it did not. However, when it is re-

membered that this bond could not operate until its delivery, and that these two sureties placed said bonds in the hands of George W. Susong and others to have the same completed before its delivery, and such sureties thereby, in law, made such co-obligors their agents—not the agents of the obligee—to procure such signatures; and when, as they contend, such signatures of A. E. and W. A. Susong were forged to such bond, and in that condition the bond was delivered to Sullivan, the obligee, or his agent, does there not arise an equity in Sullivan whereby he can say: Grant that the bond which when presented to me or my agent, Mr. Ansel, for acceptance, although entirely regular on its face as having been executed by A. E. and W. A. Susong, yet in fact their names were forged thereon and thereto, this will not avail you as a defence, and you are estopped from proving such forgery, because, "when one of two innocent persons must suffer, the loss must fall upon him who put it in the power of a third person to cause such loss; as well as upon the principle that when an agent is clothed with apparent authority to do an act, he may bind his principal within the limits of that authority, whatever may have been his private instructions." *Fowler* v. *Allen*, 32 S. C., 236. It is true, that Mr. Justice McIver was discussing a negotiable instrument in the case last cited, yet when he used this language, he precedes it with the remark that "the proposition does not rest alone upon the peculiar character of *negotiable papers*, put upon the well settled principle" as above quoted.

It would seem, therefore, that Williams and Stuart, the defendants, having made George W. Susong and the other co-obligors their agents to procure the signatures of W. A. Susong and A. E. Susong, and their names being forged as signers of the bond while it was in the hands of their agents before its delivery to the payee or his agent, that the principle above quoted, when one of two innocent parties must suffer, the loss must fall upon him who put in the power of the third person to cause such loss, will make them liable, and forbid their offering proof that the names of W. A. Susong and A. E. Susong, or either of them, were forged as signers of the bond.

Before fortifying the foregoing declaration of the law by

quoting from adjudged cases and respectable authors, it may be as well to point out the hardship to the plaintiff of any other construction of the law applicable to this case. Here the plaintiff has secured the payment of his debt by seizing the property of this firm and two of its members, within the jurisdiction of the courts of this State, and by his honest reliance upon the bond delivered to him, he surrendered his lien upon all the attached property, not only that of the firm of Susong & Co., but also of that attached of George W. Susong and D. L. Boyd as individual partners in said firm. The plaintiff has complied with his duty under the bond, and has pursued this firm and every member of such firm until he has a valid judgment against them for the amount originally sued for, and this after one of the most fiercely and closely contested litigations that has occurred in our courts. See 30 S. C., 395; 36 *Id.*, 287; 40 *Id.*, 154. And now, after having complied with his duty in every respect, the fruit of his victory is to be wrested from him by the assertion by the sureties *of a fact* that their principals are interdicted from setting up themselves in their own behalf. And with no allegation in the pleadings, or any proof tendered at the trial to show, that the plaintiff was guilty of any negligence, or misconduct, or *laches*, or notice, or knowledge of any irregularity or fraud.

Let us now briefly refer to the law, as settled by decisions and approved authors. 1st. A bond operates from its delivery. "There is a distinction to be observed between the effect of the delivery of negotiable and non-negotiable paper. The one is governed by the law merchant, and the other by the law governing other contracts. But delivery is essential to the validity of a bond or other non-negotiable paper." Bayliss on Sureties and Guarantors, 98; *Wild Cat Branch* v. *Ball*, 45 Ind., 213; *McPherson* v. *Meek*, 30 Mo., 345; *Ayres* v. *Milroy*, 53 *Id.*, 516; *State* v. *Young*, 23 Minn., 551; *Hall* v. *Parker*, 37 Mich., 590. And this doctrine is impliedly recognized in the case of *Gourdin* v. *Read*, 8 Rich., 232; *Mills* v. *Williams*, 16 S. C., 593.

2d. A bond to which there are several obligors, some of whom, as between themselves, are principals and other sureties, and when delivered to the obligee has signatures of obli-

gors different from those that appear in the body of the bond, is notice to the obligee whereby the surety to such bond may be released from any liability thereunder, unless proof is made that such surety waived such defect before delivery. Mr. Bayliss, in his work on Sureties and Guarantors, at pages 212, 213, says: "So, if the bond bears upon its face evidence that it is an incomplete instrument, or there is something in the attendant circumstances showing knowledge or its equivalent on the part of the recipient that the instrument was not to be delivered until other signatures were obtained or other acts done of equal importance, the delivery of the instrument will create no liability as against one who executed it on the express condition that it should not be delivered to the obligee until the instrument was complete, or the other signatures obtained or other stipulated acts done." The case of *Pawling* v. *United States,* 4 Cranch, 219, is an apt illustration of this doctrine, for, in the case quoted, Todd, a surety, wrote the names of those persons with whom he was willing to become sureties on Ballinger's bond, and called on those who witnessed his signature to remember this fact. Signatures of others than those named in the bond itself were afterwards obtained without Todd's knowledge or acquiescence. The court, per Marshall, C. J., sustained Todd's right to prove those facts in his exoneration as an obligor of the bond. In *United States* v. *Leffler,* 11 Peters, 86, the foregoing case was recognized. *State Bank at Trenton* v. *Evans,* 3 Green (N. J.), 155, was a case where one who was named in the body of the bond, did not sign the same, and the court held that the surety incurred no liability thereunder.

3d. A bond which purports to be made by several persons who are named in the body of the bond as obligors, and which after being executed by the sureties therein named and left with the principal to be completed and then delivered to the obligee, is presented to and delivered to the obligee fairly executed, with nothing to warn such obligee either by word, act or in the instrument itself that any one or more of the names of the obligors named therein, and who had to sign the same after such sureties had already subscribed the same, were forged, but which forgery occurred while the instrument was

in the hands of a co-obligor and before delivery to the obligee, is a valid obligation of such surety, and he is estopped in an action thereon against him to allege and prove that the name of one or more of his co-obligors was forged to such instrument. Mr. Bayliss, in his work on Sureties and Guarantors, at page 211, says: "The current of the later decisions is to the effect that, where a surety places an instrument perfect on its face in the hands of the proper person to pass it to the obligee, the law justly holds that the apparent authority with which the surety has clothed him, shall be regarded as the real authority; and as the condition was unknown to the obligee, therefore, the benefit of such condition shall not avail the surety." *Russell* v. *Freer*, 56 N. Y., 67; *State* v. *Potter*, 63 Mo., 212; *Nash* v. *Fugate*, 24 Gratt, 202; *Dair* v. *United States*, 16 Wall, 1; *Butler* v. *United States*, 21 *Id.*, 272; *Smith* v. *Peoria County*, 59 Ill., 412; *State* v. *Peck*, 53 Me., 291; *McCormick* v. *Bay City*, 23 Mich., 457; *Cutler* v. *Roberts*, 7 Neb., 4.

In this connection, it may be well to distinguish the principles really entering in to make up the decisions by our own court of *Gourdin* v. *Read*, 8 Rich., 232, and *Mills* v. *Williams*, 16 S. C., *supra*. In the first case cited, a surety, Read, had signed a bond, leaving the payee or obligee's name in blank, and entrusted such unfinished instrument to his principal, one Commander, to negotiate a loan. When Commander approached Gourdin to negotiate a loan of money from him on this bond, this blank was unfilled, and after Gourdin consented to make the loan, the principal, Commander, in his presence, filled in the blank space with Gourdin's name. When action was brought by Gourdin against Read on this bond, he defended on this ground, and the additional ground that he had revoked the verbal power he had entrusted Commander with to fill in the payee's name. Under these circumstances, it is very evident that Gourdin was put upon notice to inquire by what authority Commander placed his name upon said bond as the obligee thereof. This was good law then, and it is good law now. It falls under the head of those cases where the instrument itself furnishes notice, so that inquiry may be made as to the power of the principal obligor to act for his surety.

So it is in the second case just cited, *Mills* v. *Williams*, 16 S. C., *supra*. In the sealed note then in contention, it was in evidence that the note on its body stated the value received to be a *mule*, and the payer's name was left unfilled. One of the obligors gave the note for a *horse* to a different person than that from whom the mule was to be purchased. This court held that both the obligor and her sureties, other than that one who negotiated for the purchase of the horse, were released. This decision was correct, for here the instrument itself, being non-negotiable in two particulars, served notice upon the obligee that he was taking the risk himself in such transaction, for the consideration expressed in the note was the purchase of a mule, and the name of the payee was left blank.

So, too, the case from Massachusetts of *Russell* v. *Annable*, 109 Mass., 72 (s. c., 12 Am. Rep., 665), is perfectly consistent with these principles, and was properly decided, as we shall now show. In a case where an attachment had been sued out upon the partnership property, a bond was prepared in which each partner was stated as an obligor, and one Annable signed as a surety thereto, but the principal obligors were parties thereto only by one partner signing the *firm name* opposite the seal. No ratification of this use of the firm name by the other partners was contended for, and, in fact, it was not true. Here, therefore, there was expressed notice to the obligee that, under the law—and every one is presumed to know the law—such a bond was a nullity, and the surety when sued claimed the benefit of this patent defect on the face of the bond, giving notice to the obligee thereof; and, of course, the court decided that he was released from all liability thereunder. If it is desired, this doctrine will be found to be fully sustained in *King County* v. *Ferry* (Wash.), 32 Pac. Rep., 528; *Helms* v. *Wayne Ag. Co.*, 38 Am. Rep., 147 (73 Ind., 325); *State ex rel. Brown* v. *Baker*, 27 Am. Rep., 214; *Stern* v. *People*, 102 Ill., 541; *Lombard* v. *Mayberry*, 24 Neb., 674; *Bank* v. *Stevens*, 39 Me., 532; *State* v. *Hewett*, 72 Mo., 603; *Mathis* v. *Morgan*, 58 Am. Rep., 847; *Wood* v. *Ogden*, 16 N. J., 453.

*Fourth*. A bond signed by one or more of several obligors, but signed by the surety before all the obligors have signed,

but not delivered to the obligee until after all have signed, is esteemed in law to be entrusted by the surety to his obligors as agents to procure the completion of the bond. "In these cases of conditional agreement, it is the surety who puts trust and confidence in the principal and not the obligee; and if any one is to be the loser it should be the surety, for he puts it in the power of the principal to create the mischief complained of. The bond having been accepted and acted upon, the surety is estopped from setting up an unperformed and undisclosed condition. The cases before cited all proceed upon the ground that there is nothing upon the face of the bond, as disclosed by the attending circumstances, to apprise the obligee or accepting officer of a state of facts which should prevent its acceptance." *State* v. *McGonigle* (Mo.), 20 Am. St. Rep., 612. "The law makes the principal the agent of the surety for the delivery of the bond." *Jordan* v. *Jordan*, 10 Lea, 124 (43 Am. Rep., 299), and cases there cited. *Carroll* v. *Ruggles Co.*, 58 Am. Rep., 226. The principle is recognized in our own case of *Fowler* v. *Allen*, *supra*.

The judgment should be affirmed. It is the judgment of this court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE GARY, *concurring*. The case of *Dunn* v. *Garrett*, 93 Tenn., 650, decided October 2d, 1894, and reported in the Central Law Journal of December 14th, 1894, page 490, sustains the conclusion announced by Mr. Justice Pope in the leading opinion in this case. The facts of that case are thus stated by Mr. Justice Beard, as the organ of the court: A bond, unofficial in character, was executed by one Garrett as principal, and by the defendants as his sureties, payable to complainant as obligee. This bond, regular in its form and perfect in its face, was delivered by the principal obligor, and was accepted by the latter in good faith, as a complete instrument, without any facts or circumstances attending its delivery to excite suspicion or arouse inquiry on the obligee's part as to the mode of its execution. On these facts, the question here presented for determination is this: After loss covered by the terms of this bond has occurred to the obligee by the default of

the principal obligor, can a surety avoid recovery for this loss upon the ground that he had made a private agreement with his principal at the time of signing, and leaving it in the latter's hands, that the principal obligor should not deliver it to the obligee until another party has signed it as surety, when in violation of this agreement, and without the knowledge or consent of the surety, the bond was subsequently delivered?

After quoting with approval the following language from the case of *Jordan* v. *Jordan*, 10 Lea, 124, to wit: "The law makes the principal the agent of the sureties for the special purpose of delivering the instrument. * * * It is a case for the application of the ordinary principle of agency, that when the agent is clothed with apparent authority to do the act, he may bind the principal within the limits of that authority, whatever may have been his private instructions," the court proceeds as follows: "In other words, the surety has innocently, but negligently, placed it in the power of his agent to inflict a loss upon another, who is equally innocent, and in no respect guilty of negligence. In such a case, the effect of the holding of *Jordan* v. *Jordan, supra,* was, whenever a loss occurred as the result of such negligence, to apply the rule announced in *Lickbarrow* v. *Mason*, 2 T. R., 63, that, 'whenever one of two innocent persons must suffer by the acts of a third, he who has enabled the third person to occasion the loss must sustain it.' * * * In *State* v. *Potter*, 63 Mo., 212, the court says: 'Here the surety who defends this action had invested the principal with an apparant authority to deliver the bond, and there was nothing on the face of the bond or in any of the attending circumstances to apprise the official who accepted it, that there was any secret agreement which forbade its acceptance. The surety is alone at fault in the matter, as, but for his unwarranted trust in Turley, the latter would never have had it in his power to occasion the loss which the beneficiaries of this bond must suffer, if the defence made by the surety is successful. * * * Surely, then, a more opportune application of the language of Lord Holt in *Hern* v. *Nichols*, 1 Salk, 289, could not occur than to the case before us, that, 'seeing somebody must be the loser by the deceit, it is more

reasonable that he that employs and puts trust and confidence in the deceiver should be loser, than a stranger.' * * *."

The court then concludes as follows: "We are satisfied to adopt the rule as found in *Dair* v. *United States, supra,* and other similar cases already referred to, as resting on sound principle, and sustained by the weight of authority. We agree with the court in *Nash* v. *Fugate,* when it says: "It is impossible to foresee the mischief of adopting a different rule,' for 'an obligee having in his possession an instrument signed by responsible parties, to all appearances complete and valid, may at any distance of time be confronted and defeated by a secret parol agreement between the principal obligor and some of the sureties, of the existence of which he had not even a suspicion. How is it possible to provide against these secret agreements? How are they to be met and disproved? In the nature of things, the obligee can offer no evidence besides the bond, as the knowledge of the condition is generally confined to the principal obligor and his sureties.' It is proper to add, that in all such cases, to give the holder the benefit of the rule here announced, it must affirmatively appear, as it does in this case, that he took the instrument in question without notice of its conditional delivery."

In the case of *Fowler* v. *Allen,* 32 S. C., 229, there were two questions raised by the appeal, the second of which was: Whether there was error in instructing the jury that even if the defendant did sign the notes upon the condition stated, which it is conceded was not complied with, she would nevertheless be liable thereon, unless the plaintiff had notice that she signed upon such conditions. In delivering the opinion of the court, Mr. Justice McIver said: "As to the second question, while it is not to be denied that there is some conflict in the cases elsewhere, we think the decided weight of authority, as well as argument, is in favor of the proposition that where one signs a negotiable note, perfect on its face, as surety for another upon the condition known only to the principal, that it is not to be delivered to the payee until something else is done, the surety will be liable, even if such condition be not complied with, unless notice is brought home to the payee of such condition.

This proposition does not rest alone upon the peculiar character of negotiable paper, but upon the well settled principle that where one of two innocent persons must suffer, the loss should fall upon him who put it in the power of a third person to cause such loss; as well as upon the principle that where an agent is clothed with apparent authority to do an act, he may bind his principal within the limits of that authority, whatever may have been his private instructions. Here the principal debtor, after signing the notes, takes them to the defendant for the purpose of procuring her signature as his surety, in accordance with the agreement made by him with the plaintiffs, and when he delivers them properly signed, surely the payees cannot be affected by any private instructions which the surety may have given to her principal, unless the same were communicated to the payees. The surety, by signing the notes, complete in form, and placing them in the hands of her principal to be delivered to the payees even though upon a condition, has placed it in the power of her principal to deceive the payees, and if loss ensued, it must fall upon the one who contributed to that loss rather than upon the innocent payees, who were left in ignorance of the conditions upon which the notes were signed. The principal debtor was the agent of the surety and not of the creditor, and if he has done an act for the doing of which he was clothed with apparent authority, even though it may have been done in violation of his private instructions, the person who invested him with such apparent authority must take the consequences * * * Some of the cases, notably *Dair* v. *United States*, 16 Wall., 1, followed by *Butler* v. *United States*, 21 *Id.*, 272, have extended the principle above laid down to unnegotiable as well as negotiable instruments."

It was no part of the duty of the plaintiff herein to supervise the execution of the bond, and when it was delivered to him he had the right to presume that the signatures were genuine, unless he had notice of the forgery, or there were facts apparent upon the face of the bond sufficient to put him on inquiry. It was not contended that the plaintiff had actual notice of the forgery at the time the bond was delivered, but that the bond upon its face disclosed facts sufficient to arouse suspicion, and

put the plaintiff on inquiry. There is no doubt that such facts would defeat a recovery upon the bond. The testimony offered by the defendant to show that the signatures of W. A. Susong and A. E. Susong were not genuine, but were forgeries, was, under our view of the law governing this case, only competent in case the bond showed upon its face such facts as were calculated to excite suspicion, and put the obligee on inquiry. Whether the bond upon its face disclosed such facts, was a preliminary question to be decided in the first instance by the presiding judge. *Wicker* v. *Pope*, 12 Rich., 391; note 3 to section 564 of Greenl. Evid. (2d edition).

In ruling upon this question, the presiding judge said: "There is nothing about the bond as delivered which is sufficient within itself, on the evidence here, to put the obligee of the bond on notice." In the case of *Sims* v. *Jones*, *ante*, 91, this court says: "Where the rulings of the Circuit Judge are brought in review before this court, two things must appear: (1) That the ruling to which exception was taken is erroneous; (2) That the appellant has suffered prejudice by such erroneous ruling." There is nothing in the "Case" showing that the appellant has suffered prejudice by the rulings of the presiding judge, alleged to be erroneous. A copy of the bond is set forth, but it does not show upon its face that there were facts sufficient to put the plaintiff on inquiry.

The appellant contends that it appears that the bond was not probated by a subscribing witness, as required by Rule 66 of the Circuit Court, and that this was a fact sufficient to put the plaintiff on inquiry. This requirement of the rule was held to be a nullity in the case of *Grollman* v. *Lipsitz*, lately decided by this court.

It would be very unjust to the plaintiff that a new trial should be granted, on the ground that the bond disclosed facts sufficient to excite inquiry, and it should appear upon the second trial that the Circuit Judge was right in holding that no such facts existed.

There being nothing before this court showing that the appellant has suffered prejudice by the rulings of the Circuit Judge, the exceptions relating to this question cannot be sus-

tained. I concur in the opinion delivered by Mr. Justice Pope.

MR. CHIEF JUSTICE McIVER, *dissenting.* This is an action on a bond, a copy of which appears in the "Case," which should be set out in the report of the case. The main defence relied upon was that said bond was intended to be, and was in fact, a statutory bond given for the purpose of discharging certain writs of attachment, issued by the clerk of the Court of Common Pleas for Aiken in an action then commenced by the present plaintiff, W. E. Sullivan, against George W. Susong, W. A. Susong, A. E. Susong, James H. Rumbough, and D. L. Boyd, copartners in business, under the name of Susong & Co., which attachments had been levied upon certain property of said Susong & Co., and of some of the individuals composing that firm, in the counties of Greenville, Aiken, Edgefield, Abbeville, and Laurens, and the defendants contend that said bond was void as a statutory obligation for want of compliance with certain statutory requirements. The plaintiff, on the other hand, insists that said bond was a mere common law obligation, and never intended to be such an undertaking as was contemplated by the statute. So that our first inquiry is, whether the bond upon which the action is based was a statutory undertaking or a mere common law obligation.

When Susong & Co., the defendants in the action commenced by attachment, appeared in such action, the statute provides that they could apply to the officer who issued the attachments (the clerk of Aiken County), or to the court (meaning, of course, the Court of Common Pleas for Aiken County), for an order to discharge the same; and upon such application, Susong & Co. should "deliver to the court or officer an undertaking * * * approved by such court or officer, to the effect that such sureties will pay to the plaintiff the amount of judgment that may be recovered," &c., Code, sections 262–3. Now it does not appear that Susong & Co. ever took any step whatever towards obtaining a discharge of the attachments by an order of any officer or any court, but, on the contrary, it does appear that they sought such discharge by an agreement with

the plaintiff. This most abundantly appears from the tele
graphic correspondence which passed between Mr. Benet,
acting as attorney for Susong & Co., and Messrs. Henderson
Bros., attorneys for Sullivan, the plaintiff, on the 27th of July,
1887, in which Mr. Benet, being in Greenville, propounds the
following inquiry to Messrs. Henderson Bros., who were in
Aiken: "Will you authorize Ansel (a gentleman of the Bar
in Greenville), to release Sullivan attachment on filing bond
satisfactory to Greenville Clerk Court?" To which Henderson
Bros., sent from Aiken the following reply: "Will authorize
Ansel to release attachments upon bond for double amount
claimed, approved by Ansel and clerk of Greenville."

When this correspondence was offered in evidence, appel-
lants objected, it seems, upon the ground that it was *res inter
alios acta*, inasmuch as it did not appear that appellants either
knew of or had any connection with such correspondence.
The objection was overruled and appellants excepted, and the
competency of this evidence is one of the points presented by
this appeal. One of the allegations in the complaint was that,
"the defendants, on or about the 27th day of July, 1887, in
order to discharge the said attachment, in pursuance of an
agreement had between said W. E. Sullivan and said Susong
& Co., did execute in favor of this plaintiff their certain bond,
&c., and this allegation was denied in the answers of these ap-
pellants. It seems to us that the evidence in question was
directly responsive to the issue thus presented, and was, there-
fore, competent—not as binding appellants to the terms of the
agreement evidenced by the correspondence, but simply to
show that the bond in question was given" *in pursuance of an
agreement* had between said W. E. Sullivan and said Susong &
Co., to which the appellants might or might not afterwards
become parties, as they saw fit.

Having reached the conclusion that the bond in question
must be regarded as an ordinary common law obligation, and
not as a statutory undertaking contemplated by the provisions
of the attachment act, it becomes unnecessary to inquire whether
it lacks any of the essential requirements of such an undertak-
ing, or, if so, whether the want of such compliance renders the

bond void as against these appellants; and we are, therefore, not to be understood as passing upon any of these questions.

But it is insisted by appellant that if the bond be regarded as a common law obligation, no recovery can be had upon it in this action, because there is no allegation in the complaint which shows that it is a paper of that character, and the case of *Booker* v. *Smith*, 38 S. C., 236, is cited to sustain that proposition. While we do not propose to question the authority of that case for the point there decided, we do not think the case is applicable here. In the first place, the bond there sued upon was a bond to procure a warrant of attachment, while here the action is upon a bond given to obtain a release of the levy of an attachment. But this, which may possibly be regarded as an immaterial difference between the two cases, is not the only difference. There the bond, or undertaking, upon its face showed that the intention was to give the undertaking prescribed by the statute, and there was no hint or suggestion that the undertaking was intended to be a common law obligation, while here the bond not only does not purport to be a statutory undertaking, but, on the contrary, purports on its face to be an obligation given without reference to the provisions of the statute; and in the complaint it is expressly alleged that it was given *"in pursuance of an agreement"* between Sullivan and Susong & Co., which negatives the idea that it was an obligation given in pursuance of the statute. We do not think, therefore, that this position of appellants can be sustained.

Regarding, then, the bond constituting the basis of this action as a common law obligation, the appellants contend that they are not bound thereby, for the reason that the bond shows on its face that they were to be bound merely as sureties of Susong & Co., and that until each one of the members of that firm (the bond being an instrument under seal) signed the same, they, the appellants, assumed no liability; and they offered evidence tending to show that one of the members of that firm, to wit: A. E. Susong, the one who was understood to be worth the amount of the bond, never did in fact sign the bond, but his apparent signature thereto was forged, and that the signature showed on its face that it was not genuine. To understand

properly the ruling of the court as to the offer of this testimony, it will be necessary to state substantially what occurred before and at the time the bond was signed by the appellants. According to the testimony of the appellant, Williams, which was not objected to, except as hereinafter stated, on the day the bond was signed, and before it was signed by appellants, G. W. Susong and Boyd, two of the members of the firm of Susong & Co., went to the store of Williams, and requested him to sign the bond as surety for Susong & Co. "Mr. Susong stated that his two brothers belong to the company, and would sign the bond, of course; and I told him that I knew that there was no risk if W. A. and A. E. Susong signed it, and stated that they belonged to the company and of course would sign it." To this testimony plaintiff's counsel objected, unless notice is brought home to the plaintiff, and defendants' counsel stating that they would prove notice, no ruling of the court was then made. The witness, Williams, further stated that he knew the financial condition of W. A. and A. E. Susong—"they were considered among the wealthiest and most substantial men in East Tennessee." The witness also stated that he consented to sign the bond on condition that W. A. and A. E. Susong would sign it.

On the same day and soon after this conversation, the witness was sent for to go to the clerk's office, and said: "I went into the clerk's office, and Mr. Moseley showed me the bond, and I read it and glanced at it to see if W. A. and A. E. Susong were members of the company, and I saw their names set forth in it, and I signed the bond." It also appears that when Williams went into the clerk's office, the only name signed to the bond was that of G. W. Susong, and soon after Stuart and Williams signed in the order stated. At this time, the following persons appear to have been present: Mr. Ansel, who, it will be remembered, was representing the attorneys for the plaintiff, Mr. Benet, who was acting as attorney for Susong & Co., and Mr. Moseley, who, with Mr. Ansel, was to approve the security, besides Boyd and Rumbough, two of the members of the firm of Susong & Co., and probably G. W. Susong. The witness, Williams, further stated that Boyd, Benet, and Ansel were discussing the completion of the bond by the other parties,

W. A. and A. E. Susong, who were not present. The witness was then asked this question: "State whether it was understood by Mr. Ansel and Mr. Benet and the other parties who were interested in this matter, that W. A. Susong and A. E. Susong should sign that bond before it should become effective?" To this question plaintiff's counsel objected and the objection was sustained, to which defendants' counsel excepted. The witness was then asked, "What was the substance of what passed?" to which the witness replied: "The substance of it was, that the bond was to be signed by W. A. and A. E. Susong, and the conversation was between Boyd, Benet, and Ansel, and whether the others joined in, I do not know; I do not know that I said anything on the subject." This witness further testified that he did not know, and had no information as to the fact, that A. E. Susong had not signed the bond before it went into the possession of the plaintiff, and never learned the fact until May or the summer of 1892, shortly before this action was commenced, 2d August, 1892.

On the cross-examination, this witness said that he did not remember to have said anything in the clerk's office when he signed the bond, about the conversation between himself and Boyd and W. G. Susong, at his store, wherein he agreed to sign the bond on condition that it was signed by A. E. and W. A. Susong. When this witness was recalled, he was asked: "What was the understanding—what was expressed by these parties before you signed the bond as to who would sign it?" To which he replied as follows: "As I stated in my direct or cross-examination, that I did not remember saying anything to them about the condition of my signing it, but Mr. Boyd and Mr. Ansel and Mr. Benet were discussing the perfecting of the bond and the completion of it, and it was the understanding that that bond was not to be delivered until W. A. and A. E. Susong signed it." When asked if that was his understanding, he replied: "That is my presumption, that that was the understanding—that was the understanding." In the cross-examination, the witness again said that he did not state or say anything about his agreement at the store with Boyd and G. W. Susong, while in the clerk's office; but he added: "It was

stated by one of these men, Benet, Boyd or Ansel, that that bond was not to be delivered until it was completed by the signature of W. A. and A. E. Snsong. That was so stated by some of them, and if it had not been stated, I would not have signed it;" though the witness again repeated that he himself said nothing of the kind while in the clerk's office.

The defendant's counsel then proposed to offer evidence tending to show that the name of A. E. Susong was forged, which, upon objection, was ruled out, the court holding as follows: "It seems to the court that the testimony of Mr. Williams is not sufficient to show any agreement between himself and Ansel and Moseley with reference to the execution of this bond, nor does it appear that there was any condition between the parties at that time with reference to his signing the bond, and upon that ground I will have to exclude all evidence going to show forgery." To this ruling defendants' counsel excepted, and then proposed to offer evidence tending to show that the signature on the bond does resemble that of A. E. Susong, and that it shows on its face that it is not genuine, all of which was ruled out, and defendants excepted.

For the purpose of determining the legal question presented, it is proper to assume that appellants, if permitted to do so, could have shown, not only that the signature of A. E. Susong was forged, but, also, that it showed upon its face that it was not genuine, or at least that the testimony offered would have tended to show both of those facts, and this would, at least, have raised issues of facts to be passed upon by the jury. For the ruling of the Circuit Judge is necessarily based upon the theory that even if the forgery were proved, and even if the signature of A. E. Susong showed upon its face that it was not genuine, those facts would not relieve the appellant from liability, unless it also appeared that plaintiff had notice that the appellants signed the bond under an agreement that it was not to be delivered until it was signed by A. E. and W. A. Susong, or that appellants signed upon the condition that they were not to be liable until A. E. and W. A. Susong had also signed. Now conceding, for the present, the correctness of the legal proposition upon which the ruling of the Circuit Judge

was manifestly based, and disregarding the parol evidence of what occurred at the time of the signing of the bond, it seems to us clear that the bond bore upon its face notice that the condition upon which the appellants signed was that all the members of the firm of Susong & Co. should sign before the appellants incurred any liability. It is manifest that the appellants were mere sureties of Susong & Co., and had no further connection with the matter except as such sureties. Now what were they sureties for? The terms of the bond show that they were sureties for the performance of an obligation to be entered into by Susong & Co., which could only be done by the execution of the bond by each one of the members of that firm, whose names are mentioned in the bond as principal obligors. The contract of the appellants was to secure the performance of the obligation of Susong & Co.—*not* the obligation of any one or more of the members of that firm, but the obligation of *all* the members of that firm. The first step to be taken towards fixing the liability of the sureties, therefore, is to show that Susong & Co. have entered into the obligation, the performance of which the sureties have undertaken to guarantee. Until this is done, the appellants have incurred no liability, for as sureties they have the right to stand upon the strict terms of their contract.

It may be said, however, that this is a joint and several obligation, and only the appellants are sued in this action, and may be held liable as several obligors. But, in the first place, it is not so clear from the terms of the bond that the obligors are bound jointly and severally, for the terms are, "we bind our heirs, executors, and administrators, jointly and severally," not *ourselves*, our heirs, &c.; but as the word "ourselves" may have been accidently omitted by the printer, we will not rest our conclusion upon this, and, on the contrary, will assume that the bond is in form, joint and several. But assuming this, the question still remains, what is the contract of appellants, treated as several obligors? Why, nothing more than a guaranty that an obligation to be entered into by Susong & Co. shall be performed by them. It is unlike an ordinary joint

and several note, where each signer promises to pay a specified sum of money, either jointly with his cosigners or severally.

The question which we have been considering, has been the subject of much conflict of opinion in the courts of other States, as is apparent from the numerous cases with which we have been furnished by counsel on the one side and on the other of this case. Without undertaking to go over these numerous cases, we may refer to the case of *State* v. *Potter*, 63 Mo., 212 (21 Am. Rep., 440), as furnishing quite an elaborate review of the cases up to that time (1876); and we are, therefore, relieved of the necessity of considering any of the cases prior to that decision, except to say that in *Dair* v. *United States*, 16 Wall., 1, therein referred to, it was expressly stated by Davis, J., in delivering the opinion of the court, that if the name of Clond had appeared as a cosurety in the body of the bond, the decision would have been otherwise, for that would have been notice to the agent of the government, and then adds these words: "In any case, if the bond is so written that it appears that several were expected to sign it, the obligee takes it with the notice that the obligors who do sign it, can set up in defence the want of execution by the others, if they agreed to become bound only on condition that the other cosureties joined in the execution;" and that case was subsequently recognized in the case of *Butler* v. *United States*, 21 Wall., 272. It may also be noted that the case of *Russell* v. *Annable*, 109 Mass., 72 (12 Am. Rep., 665), which seems to have escaped attention in the review of cases in *State* v. *Potter, supra*, possibly for the reason that the cases under review were cases in which one surety was seeking to escape liabibity upon the ground that he signed upon condition that others were to sign as cosureties, whereas in *Russell* v. *Annable*, the question was to the effect of the failure of the principal obligor to sign upon the liability of the surety. We will recur to this case hereafter. It may be said that this review of the authorities in *State* v. *Potter*, shows that the weight of authority was in favor of the view stated above in the extract from *Dair* v. *United States*.

We shall not undertake to review the cases decided since 1876, but will content ourselves with referring to some of the

cases which seem more immediately applicable to the case in hand; for it seems that in many, if not in most, of the cases, the question has been as to the effect of the failure of a cosurety to sign, which, it seems to us, may be different from the failure of the principal obligor to execute the bond in question; though we are not to be understood as definitely deciding that there is any real difference.

In *Russell* v. *Annable, supra*, the action, as in this case, was upon a bond given for the purpose of dissolving an attachment of partnership property. Both of the partners were named as principals, but the bond was executed by only one of them in the name of the firm. It was held that the surety would not be liable without proof of the assent of the other partner to the execution of the bond. In that case the opinion of the court contains the following language: "The bond purports to be the joint and several contract of certain persons named therein as principals, and the defendant and George M. Stevens as sureties. The defendant's undertaking is only that the principal obligors shall fulfill the obligation which by the terms of the bond they have assumed. But if the bond was not binding upon both Dennett and Pottle (as it was not, for want of due and proper execution of the instrument on their part), they assumed no obligation, and it was not binding upon the sureties. It was essential to the bond that the principals should be parties to it; it is recited that they are so, and the instrument is incomplete and void without their signature. * * * The instrument is incomplete without the signature of each partner, or proof that the signature affixed had the assent and sanction of each of them. The sureties on a bond are not holden, if the instrument is not executed by the person whose name is stated as the principal therein. It should be executed by all intended parties"—citing *Bean* v. *Parker*, 17 Mass., 591; *Wood* v. *Washburn*, 2 Pick., 24. It may be said that, inasmuch as the bond in that case showed on its face that it was signed in the partnership name by one of the partners, this was notice to the obligee that the execution of the bond was incomplete, as all persons are presumed to know the law, that the signing of the partnership name to a bond by one of the partners does not

bind his copartners unless their assent or subsequent ratification is shown. Admitting this to be so, would not the fact which the defendants offered to show, and were not allowed to do so, that the signature of A. E. Susong showed on its face that it was forged, operate as notice, and much stronger notice, to the plaintiff in this case.

In *Johnston* v. *Kinball Township*, 39 Mich., 187 (33 Am. Rep., 372), decided in 1878, the action was upon the official bond of the township treasurer, "which was drawn up in the usual form, setting "forth himself as principal and plaintiff in error as sureties by name, and bound them all to the performance of his duties." The principal never 'signed the bond, and the court held that, in such case, the sureties were not liable, unless there was positive evidence that the sureties intended to be bound without requiring the signature of the principal. The court used this language: "The obligation of a surety cannot fairly be extended beyond the scope of his written contract * * * and we think that, presumptively, at least, where the contract which he signs calls for the signature of other parties, the instrument is to be deemed inchoate and imperfect until they also sign it"—citing the case of *Hall* v. *Parker*, 37 Mich., 590 (26 Am. Rep., 540), decided in 1877, which rested on the same principle. *Bunn* v. *Jetmore*, 70 Mo., 226 (35 Am. Rep., 425), is a direct authority to the same effect, and the court there said it was "the received doctrine" that sureties may show in discharge of their liability that their principal never was bound. On the other hand, the case of *Trustees of Schools* v. *Sheik*, 119 Ill., 579 (59 Am. Rep., 830), has been cited to show that the surety is not discharged by reason of the failure of the principal to sign the bond. But the reasoning of that case is far from satisfactory, as it treats the failure of the principal to sign as a mere technicality, while we think it is much more than a technicality, and, in fact, goes to the very root of the matter. But even that case concedes that if the obligee has notice of the fact that the bond was signed by the surety upon condition that the principal should also sign, or with notice of such facts as would put a prudent person upon inquiry, then the surety would be discharged. This admission

is, as it seems to us, fatal to the validity of that decision; for there, as here, the name of the principal appeared in the bond as intended to be one of the obligors, and that fact, as has been held in many cases, and with good reason, is notice to the obligee that the intention of the parties was that the signature of the principal obligee was necessary to the completion of the bond. We prefer, therefore, to follow the cases previously cited rather than this Illinois case.

Many, if not the most, of the other cases cited are cases in which a surety has claimed a discharge upon the ground that he signed the bond upon the understanding that others were to sign as cosureties before the delivery of the bond, which they did not do; and where the names of such cosureties appear in the bond, there is much conflict of authority as to the effect of that fact as notice to the obligee. We do not propose to go into a consideration of those cases, for the reason, as already indicated, that such cases may, perhaps, be regarded as standing upon a different footing from cases like the present, where the defence is that the persons named as principal obligors in the bond have failed to sign the same. We will, however, notice one of them—*Mathis* v. *Morgan*, 72 Ga., 517 (53 Am. Rep., 847), for two reasons: 1st. Because it is claimed that that case has been approved by the Supreme Court of the United States, in *Veach* v. *Rice*, 131 U. S., 293; and 2d, because the case seems to be much relied upon by counsel for respondent. In the first place, the case of *Veach* v. *Rice* arose in the State of Georgia, and involved the liability of a surety on an administration bond taken by the ordinary, which must be determined by the law of Georgia, and the case of *Mathis* v. *Morgan* was merely cited to show what has been decided to be the law of Georgia, and cannot, therefore, be properly relied upon to show that the Supreme Court endorsed the proposition of law announced in that case.

But the case of *Mathis* v. *Morgan*, besides differing from the present case in the fact that there the surety claimed relief upon the ground that one of the cosureties failed to sign the bond, while the claim for relief here is based upon the ground that the principal failed to sign the bond, presents other mate-

rial points of difference, as may be seen by a brief statement of the facts of that case. In that case the complaining surety signed the bond before another surety whose name precedes his in the body of the bond, whose signature was subsequently forged, and the complaining surety entrusted the bond to the president of the bank, the principal obligor—one Samuel—as escrow, not to be delivered to the obligee until the other sureties executed the bond; but Samuel delivered the bond to the obligee with all the signatures apparently genuine thereon, and it was held that the complaining surety was liable. It will be observed that in that case the surety, after executing the bond, entrusted it to Samuel, who should be regarded as practically the principal obligor, and thereby made him his agent to procure the signatures of the other sureties before delivering the bond; while here there is not only no evidence that the appellant entrusted the bond to any one, but, on the contrary, the undisputed evidence is that the appellants, after signing the bond, simply left it in the possession of the persons who were superintending the signing of the bond, two of whom, Ansel and Moseley, were the agents of plaintiff, the obligee. Again, in the Georgia case the bond was delivered to the obligee "with all the signatures apparently genuine thereon;" while here the appellants were not allowed to show that the signature of one of the principals, A. E. Susong, showed on its face that it was forged. The opinion of the court in that case was based upon the ground that, as the surety by entrusting the bond to Samuel to procure the signatures of the cosureties, put it in his power to commit the fraud, which was afterwards committed by some one, he must suffer, upon the familiar principle that where one of two innocent persons must suffer by the wrong-doing of a third person, the one who put it in the power of such third person to do wrong, must suffer the loss occasioned by such wrong. But for the operation of this principle in this case, it is necessary that the fact should appear, that the appellants put it in the power of the wrong-doer to do the wrong which has occasioned the loss, and that fact did not appear in this case, as it did in *Mathis* v. *Morgan.* We do not think, therefore, that the case from Georgia applies to this case.

It is urged, however, that the bond when delivered to Ansel bore upon its face the names of all the members of the firm of Susong & Co., and, therefore, the plaintiff, who had accepted it as genuine, should not be affected by the fact that one of the signatures was forged. Ordinarily a person, when he accepts an obligation purporting to be executed by another, takes it with the risk of being able to show that the signature thereto is genuine, when he finds it necessary to enforce such obligation by an action at law. But in addition to this, if the appellants had been permitted to show, as they offered to do, that the name of A. E. Susong, apparently signed to the bond, showed on its face that it was a forgery, then, clearly, the plaintiff could not claim to have been deceived.

It only remains to consider the two cases cited from our own State. In *Martin & Walker* v. *Stribling*, 1 Speer, 23, the action was against a surety upon a joint and several note, and the defence was that defendant signed the note as surety for McCullough with the understanding that one Rogers should sign as cosurety, and that McCullough should place in the hands of Rogers books and papers to be collected by him and applied to the payment of the note. The court held that, while there was no doubt that defendant signed the note with the expectation that Rogers would also sign, and that McCullough would deliver to him books and papers as an indemnity for their securityship, yet there was no evidence of any stipulation on the part of Stribling that his note should not take effect until one or both of these things were done; and there was no evidence that the signature of Stribling was obtained by any representation that Rogers would sign as a cosurety, and that McCullough would place in the hands of Rogers his books and papers to be collected and applied to the payment of the note. The case does not apply here.

*Fowler* v. *Allen*, 32 S. C., 229, is also cited. In that case the action was against the surety upon a negotiable note, and the defence was that the surety had signed the note upon a condition not communicated to the payee, which had not been performed. The court held "that where one signs a negotiable note perfect on its face as surety for another, upon the condition

known only to the principal that it is not to be delivered to the payee until something else is done, the surety will be liable, even if such condition be not complied with, unless notice is brought home to the payee of such condition." It is very clear, that this case is not in point here, not simply because the note in that case was a negotiable note, but because the note there was perfect on its face, and there was nothing to excite inquiry on the part of the payee. Besides, there the principal did sign the note, and the surety based her claim for relief solely upon the ground that an undisclosed condition, of which the payee had no notice of any kind, had not been performed.

It seems to us that the Circuit Judge erred in refusing to allow appellants to offer evidence tending to show that the name of A. E. Susong, one of the principals, as appearing on the bond, was a forgery, and that the same showed upon its face that it was a forgery, and for this reason the case should go back for a new trial.

I think, therefore, that the judgment of the Circuit Court should be reversed, and that the case should be remanded to that court for a new trial.

Judgment affirmed.